SENTRY INSURANCE A MUTUAL
COMPANY, Plaintiff,

v.

BRAND MANAGEMENT, INC., Budget
Services, Inc., and Hershel Weber,
Defendants.

Nos. 10–cv–347 (ENV)(RLM),
11–cv–3966 (ENV)(RLM).

United States District Court,
E.D. New York.

Oct. 21, 2013.

Stephen Russell Harris, Drinker Biddle & Reath LLP, New York, NY, for Plaintiff.

Henry Neal Conolly, McNamee Lochner, Albany, NY, Avrom R. Vann, Avrom R. Vann, P.C., New York, NY, for Defendants.

## MEMORANDUM & ORDER

VITALIANO, District Judge.

For more than a year, plaintiff Sentry Insurance A Mutual Company ("Sentry") has sought discovery of defendants Brand Management, Inc. ("Brand"), also known as Budget Services, Inc. ("Budget"), and of its principal, Hershel Weber. Contention, frustration, obfuscation, and failure of accommodation have been the hallmarks of defendants' response.

The overall litigation history is equally tortured, if not more so. In two now-consolidated actions, Sentry asserts, *inter alia*, a breach of contract claim against defendants, regarding a pair of workers' compensation policies issued by Sentry in 2008. (Compl. at ¶ 5, Dkt. No. 1).[1] In the first-filed action, against Brand, the parties not only completed discovery, but went to trial, which began on July 20, 2011. (Dkt. No. 49). On the first day of trial, however, interrupting the testimony of Sentry's second witness, Brand announced that it had that day sought bankruptcy protection, resulting in an automatic stay of the case and a mistrial. (Dkt. No. 51). An omen of things to come, the Bankruptcy Court subsequently dismissed Brand's bankruptcy case as a filing "bordering on bad faith." (11–bk–46230, Dkt. No. 49). At or around the same time, Sentry commenced the second action against Budget and Weber, as the alter egos of Budget, Brand, and other entities. (Compl. at ¶¶ 44–55, 11–cv–3966, Dkt. No. 1). This Court consolidated the cases, and discovery recommenced. The pretrial management disputes have come at a staccato pace. They have led to no fewer than four motions for sanctions and a plethora of memoranda and orders by Magistrate Judge Roanne L. Mann, either threatening or imposing sanctions. At the fulcrum of them all lies Sentry's alter ego claim against Weber.

On February 7, 2013, Judge Mann issued a Report and Recommendation ("R & R") that the Court preclude defendants from opposing Sentry's alter ego claim, either at summary judgment or trial, or in the alternative that the Court strike their answers and enter default judgment against them. On March 11, 2013, defendants filed timely objections to the R & R. No other objections have been filed.

### Standard of Review

■ In reviewing an R & R of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where no objection has been taken, the district court need only satisfy itself that the R & R on its face and on the record is free from any clear error. *Urena v. New York*, 160 F.Supp.2d 606, 609–10 (S.D.N.Y.2001) (quoting *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)). A district court is required, however, as in the instant matter, to "make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made" by any party. Fed.R.Civ.P. 72(b).

### Procedural History

On February 1, 2012, defendants were ordered to supply a host of documents relevant to Sentry's alter ego claim against Weber ("First Order"). (Mem. & Order, Mann, M.J., 11–cv–3966, Dkt. No. 37). Among the documents defendants were ordered to seek and produce were those related to non-party entities that were covered by workers' compensation insurance through their association with Weber (the "Insured Weber Entities"), documents related to any contracts between Brand and Budget, and an affidavit from Weber essentially attesting to defendants'

---

1. Unless otherwise specified, citations to docket entries refer to the primary docket number in this case, 10–cv–347. A second case, with a second complaint, bearing docket number 11– cv–3966, was filed and consolidated into this one; a related bankruptcy proceeding, also in this district, bore docket number 11–bk–46230.

compliance with the document demand (*Id.*). Sentry moved for sanctions and an order compelling Weber's compliance on March 30, 2012, after defendants had failed to comply with Judge Mann's First Order. (Pl. Mot., Dkt. No. 71). Sentry proffered that it had provided defendants with sufficient opportunity to cure deficient production, and that their counsel had "advised that there were no additional documents to produce"; counsel further assured Sentry that Weber would affirm in a forthcoming affidavit that no additional documents existed. (*Id.* at 2).

Nearly five months later, Judge Mann, in a Memorandum and Order dated August 10, 2012 ("Second Order"), found that defendants had provided only "minimal production," which was "woefully inadequate", and that Weber had still provided no affidavit concerning his compliance with the First Order. (Mem. & Order, Mann, M.J. 9–10, Dkt. No. 137; R & R 3, Dkt. No. 179). Finding that defendants had "willfully violated" the First Order, Judge Mann ordered that defendants fully comply with the First Order and submit the still-outstanding affidavit from Weber, "[o]n pain of sanctions". (Mem. & Order, Mann, M.J. 10, Dkt. No. 137).[2] Defendants were directed to comply with the Second Order by August 22, 2012, a date which would come and go without production compliance but not without controversy. According to a stream of letters filed by counsel, defendants made available "a partial production" on the August compliance date but refused to permit their copying or retrieval by Sentry's agents because Sentry arrived later than expected, and because of an apparent misunderstanding about confidentiality stipulations. *See, e.g.*, (R & R 4, Dkt. No. 179; Letters, Dkt. Nos. 142–44). Actually, on this dust-up, defendants provide two versions of reality. In the first, they say that their restricted production of August 22, 2012 was both full and ready for processing at the time set. In the second, their counsel, two weeks later, requested an extension of time to complete the production—already months overdue. (Letter, Dkt. No. 151). Apparently, the second version of reality was more accurate, since on September 5, 2012, defendants finally produced an affidavit by Weber addressing discovery compliance. Compellingly, it was backdated to August 22, 2012, and contained a series of errors, contradictions, and artfully-worded obfuscations. In any event, it failed to comply with Judge Mann's Second Order. *See* (Pl. Mot, Dkt. No. 153; Def. Resp. 10, Dkt. No. 158 (admitting "clear error" on the face of the affidavit)). Judge Mann, in a display of remarkable patience and restraint, especially in light of the outright initial misrepresentation by defense counsel that defendants' had complied with the Second Order, then issued another order denying the defense motion for an extension of time, chastising defendants for a failure to act in good faith, and insisting that production be completed immediately— with all directives, again, "on pain of sanctions" ("Third Order"). (Mem. & Order, Mann, M.J. 3–4, Dkt. No. 152).

By October 18, 2012, the situation had not improved, and Sentry filed a new motion to compel discovery and for sanctions. (Pl. Mot., Dkt. No. 153). Sentry continued to seek documents requested in connection with its alter ego theory, and charged that Weber, by his unmodified September 5, 2012 affidavit, had "persist[ed] in his failure to make the required attestation[s]" and had "attempt[ed] to improperly limit the universe of documents that the Court [had] ordered the Budget Defendants to produce." (*Id.* at 3). In response to Sentry's motion, defendants continued to stand by the claimed adequacy of the Weber affidavit, noting it was "a very detailed affidavit of fourteen (14) pages." (Def. Resp. 4, Dkt. No. 158). Flat out, defendants represented that "[c]learly, Weber and Budget have provided to Sentry all of the documents in their possession, custody and control responsive to the document demands

---

2. In the Second Order, Judge Mann also awarded attorney's fees and costs to plaintiff in connection with its pursuit of a remedy for defendants' noncompliance with the First Order. (Mem. & Order, Mann, M.J. 11, Dkt. No. 137). The parties were requested to confer regarding a reasonable award of fees, but to no avail; Judge Mann subsequently granted Sentry's motion for fees in the amount of $6570. (Mem. & Order, Mann, M.J., Dkt. No. 179). Judge Mann's sanctions order for that episode is the subject of a separate objection by defendants, which is overruled in a separate Memorandum & Order of the Court dated today.

and the prior Orders of this Court." (*Id.* at 10).

In what had become commonplace, further consideration made manifest the persistent disconnect between defendants' representations and reality. As a result, on December 19, 2012, Judge Mann issued still another Order ("Fourth Order"), noting the existence of yet-unproduced documents, detailing once more the ways in which the Weber affidavit had failed to comply with her previous orders, and ordering that a supplemental Weber affidavit be filed no later than December 27, 2012 to cure the noted deficiencies. (Mem. & Order, Mann, M.J. 10, Dkt. No. 160). Succinctly, Judge Mann wanted Weber's averments to inform her deferred determination of whether—and to what extent—further sanctions would be merited. As Judge Mann observed,

> Since most of the delayed and/or outstanding discovery relates to the Insured Weber Entities, and, thus, Sentry's alter ego claim, this Court would be justified in entering an order precluding defendants from offering evidence opposing Sentry's alter ego claim. The Court will defer imposing such a preclusion sanction until the submission of Weber's supplemental affidavit. If the supplemental affidavit is unsatisfactory or untimely, the Court will revisit the issue of a preclusion order sanction. Discovery ended more than six months ago; the Court will tolerate no further delays.

(*Id.* at 14–15 (internal citations omitted)).

Months after representing to all who would listen that production was complete, on December 26, 2012, defendants provided Sentry with a partial production of as-yet-undisclosed documents relating to one of many Insured Weber Entities. *See* (Pl. Mot. 2, Dkt. No. 166). More productions were to come, continuing through at least January 8, 2013, at which point more than 100,000 additional pages had been provided to Sentry. More incredibly, despite the vastness of the miracle production, certain payroll documents called for by the Fourth Order remained unproduced. (*Id.* at 2). Whatever the value of the produced documents, the late summer discovery representations in affidavits and statements of defendants and their counsel had proved worthless.

On January 2, 2013, defendants produced a supplemental Weber affidavit, backdated to December 27, 2012, which defendants did not file with the Court. (*Id.*). The supplemental Weber affidavit, depressingly, was replete with inconsistencies, repeated misrepresentations, and dissembling. For instance, it did not attest to whether any current or past contract exists or existed between Budget and Brand, altogether ignoring the requirements and reminders of the Second, Third, and Fourth Orders. *See* (Mem. & Order, Mann, M.J., Dkt. No. 137; Mem. & Order, Mann, M.J., Dkt. No. 152; Pl. Mot., Dkt. No. 166-1). The original and supplemental Weber affidavits were also apparently contradicted by a subsequent document production. That production established that at least one Insured Weber Entity maintained bank accounts, in spite of Weber's affirmations that bank accounts were never maintained by Insured Weber Entities. *See* (Pl. Mot. 3, Dkt. No. 166). Seizing on these and other acts or omissions frustrating discovery and defying compliance orders, Sentry pressed anew for sanctions. (*Id.* at 3–7). Defendants failed to timely oppose Sentry's motion but did—following Sentry's accusations—produce more than 200 boxes of additional documents apparently relating to bank statements which Weber had sworn did not exist. *See* (R & R 12–13, Dkt. No. 179).

The last fleck of straw had landed on the camel's back. On February 7, 2013, Judge Mann filed the subject R & R, concluding that an order of preclusion be entered against defendants as a sanction for their willful and bad faith noncompliance with discovery demands and pretrial management orders.

### Discussion

█ Judge Mann's R & R addresses two separate issues: first, the appropriate sanction to be imposed for defendants' failure to comply with the Second Order, which had been deferred by the Fourth Order; and, second, whether, separately, additional sanctions were merited for defendants' failure to

comply with the Third and/or Fourth Orders. The first is discussed here.[3]

## A. *The Breadth of Available Sanctions*

██ Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, courts enjoy broad discretion to sanction parties that fail to obey discovery orders; this discretion includes, but is not limited to, the power to issue an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses." Fed.R.Civ.P. 37(b)(2)(A)(ii); *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir.1991). A court's discretion should be guided by the principle that "the severity of the sanction must be commensurate with the non-compliance," *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir.2007), such that sanctions are both "just . . . and relate to the particular claim to which the discovery order was addressed." *Daval Steel*, 951 F.2d at 1366 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). An order of preclusion "is strong medicine, [but] such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators." *Id.* at 1367 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). Finally, when selecting an appropriate sanction from among the many options provided by Rule 37, courts have considered: (1) the willfulness of acts underlying noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of noncompliance; and (4) whether the noncompliant party was on notice that it faced possible sanctions. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302–03 (2d Cir.2009). In textbook fashion, Judge Mann has considered all of these factors in reaching her conclusion.

## B. *Defendants' Objections Overruled*

Defendants dispute their noncompliance.[4] Mysteriously, for example, as part of their hopeless defense to the sanction recommended by Judge Mann, they lament that they were "destined to be faulted" with respect to the Weber affidavits. (Def. Mem. 20, Dkt. No. 184). Particularly, defendants argue that "Weber was directed to use very specific language in the Supplemental Affidavit", but was still "faulted for not having provided the information in a different manner. Weber did exactly as he was instructed to do and should not be sanctioned for having followed the directive of the Magistrate." (*Id.* at 21). Defendants, however, mischaracterize both Judge Mann's requirements for the supplemental Weber affidavit and what was actually stated in that affidavit under oath.

Indeed, it was this sort of dissembling that led to the order directing Weber to file a supplemental affidavit in the first place. Specifically, the Second Order directed that:

> Weber must provide an affidavit or affirmation attesting to the fact that he has

---

**3.** As to the second question, a different standard applies and, on these facts, short-form adjudication is all that is required. The issue arises out of Judge Mann's directive that defendants pay sanctions of attorney's fees and costs to Sentry for violating the Third and Fourth Orders. That determination being entirely within Judge Mann's discretion to make, and finding no abuse of discretion or clear error, this Court adopts Judge Mann's R & R as the opinion of the Court insofar as it levies sanctions for violations of the Third and Fourth Orders. *See* 28 U.S.C. § 636(b)(1); *Commodity Futures Trading Comm'n v. Standard Forex, Inc.*, 882 F.Supp. 40, 42 (E.D.N.Y.1995) ("magistrates are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused."). The parties have since reached an agreement—astonishingly—with respect to the fee award. In line with these findings, of course,

defendants' objection to this recommendation is overruled.

**4.** This may be explained by their fundamental misconception, benevolently, of what federal discovery rules required them to do in the first place. In their objection, defendants assert that their most recent document productions were made only "out of an abundance of caution and not because they were at all relevant or probative of any of the claims in this action." (Def. Mem. 22, Dkt. No. 193). The statement belies, at best, defendants' fundamental misunderstanding of Judge Mann's orders and their responsibilities. More to the point, if they had a good faith objection to production, which the Court finds they did not, it was up to them to object and for Judge Mann to rule, and not for defendants to unilaterally resolve.

produced all responsive documents in his possession, control or custody. If no contract ever existed between Brand and Budget, Weber's sworn statement must also include confirmation of that fact. Failure to comply with this order may result in a finding of contempt.

(Mem. & Order, Mann, M.J. 10, Dkt. No. 137). These were instructions for the *original* Weber affidavit, which, Judge Mann found, were not followed; it was the Fourth Order that laid out instructions for the supplemental affidavit. That Order provided that:

This supplemental affidavit must specifically confirm whether, following a diligent search, he has produced all responsive documents in his possession, control or custody. In order to avoid further obfuscation, the supplemental sworn statement must utilize the exact phrase "produced all responsive documents in my possession, control or custody" and must address whether any responsive documents have been destroyed or misplaced. Moreover, the supplemental affidavit must identify and correct any and all errors contained in the Weber Affidavit.

(Mem. & Order, Mann, M.J. 10, Dkt. No. 166). Destiny or not, Weber did not comply.

■ Analysis begins with the evasive representations by defendants that, while some inconsistencies may exist in the affidavits, nonetheless, those inconsistencies should have been resolved by Sentry through depositions of Weber. (Def. Mem. 19, Dkt. No. 184). This proposition wholly ignores the fact that, when ordered to make a sworn response by a federal judge, the responsibility for true and complete averments falls upon the party doing the swearing. Indeed, this proposition advances a startling absolution for untruthful assertions in an affidavit: the availability of other discovery devices to impeach the affiant excuses the affiant for dissembling. Relatedly, contrary to their own objection, the self-recognized "weaknesses" in the Weber affidavits establish that the words of Judge Mann's orders did not pre-destine Weber's noncompliance. Second, in contravention of the Second Order, neither the original nor supplemental Weber affidavit

affirmed that no contract ever existed between Brand and Budget. Nor had a copy of any contract ever been produced, *see* (Pl. Mot., Dkt. No. 166–1), leaving open the question the affidavit was supposed to close. Lastly, as defendants note, the supplemental Weber affidavit *did* (repeatedly) employ the phrase "produced all responsive documents in my possession, control or custody." The sin, of course, is that these affirmations proved *untrue,* when Judge Mann found that later-produced documents were responsive notwithstanding Weber's averments otherwise. This hollow incantation of the words of compliance sought by Judge Mann's orders, rather than douse it, only added fuel for the fire.

Moving to a blunderbuss, defendants argue, generally, that the sanctions recommended are not supported by the record or legal precedent. They cite a series of cases where default judgments or preclusion orders were entered as sanctions, and attempt to distinguish them. As an example, defendants seize on Judge Mann's quotation of *Nieves v. City of New York,* 208 F.R.D. 531, 536 (S.D.N.Y.2002), protesting that *Nieves* presented a much more vexing discovery dispute than the instant case. *See* (Def. Mem. 15–16, Dkt. No. 184). In *Nieves,* defendants note, that, unlike themselves, the sanctioned parties made little effort to participate in the case. Theirs, they say, was not the failure to litigate, but the failure to do so on the schedule ordered by the magistrate judge. (*Id.* at 16). It is more misdirection. Judge Mann simply quoted *Nieves* for the general principle that "[a]s long as [defendants] fail[ ] to comply with discovery orders, the merits of th[e] case elude determination." (R & R 14, Dkt. No. 179). Judge Mann's orders and sanctions have never been just about time and schedules. Time has been a prism illuminating the full color of defendants' evasion and obstruction of discovery.

Next, defendants urge that, because Judge Mann "failed to consider whether a lesser sanction was appropriate," the sanctions of preclusion or dismissal cannot be imposed. *See* (Def. Mem. 12, Dkt. No. 184). This is wrong both as a matter of law and of fact. Quite to the contrary, "district courts are not

required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record...." *S. New England Tel. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 148 (2d Cir.2010). But, more to the point, as the record here makes painful, Judge Mann, in fact, deferred consideration of sanctioning defendants for their violation of the Second Order for the express purpose of determining—based on the content of the supplemental Weber affidavit—which (and whether) sanctions might be appropriate. She went the extra mile, giving warnings and opportunities to cure. Plus, the proper warning shots were fired across the bow. Judge Mann noted in her Second Order that defendants risked sanctions "including, but not limited to monetary sanctions and/or entry of default judgments against them...." (Mem. & Order, Mann, M.J. 10, Dkt. No. 137). Defendants were on early notice of how serious the consequences might be if plaintiffs discovery complaints were found well-supported. Furthermore, Judge Mann's R & R also plainly considers whether lesser sanctions would be effective in this instance, and concludes that, because "monetary sanctions were not sufficient to deter defendants' persistent disregard of this Court's orders," such lesser sanctions would be of no fair use at this juncture, either. (*Id.* at 17). It is obvious from the record, therefore, that Judge Mann considered the full panoply of possible sanctions—from the least to most severe—and even entertained the idea of not sanctioning defendants further at all. *See* (R & R 9, Dkt. No. 179 ("First, the Court will revisit the issue that was deferred ... to wit, what additional sanction, *if any*, should be imposed ....") (emphasis added)).[5]

■ Defendants also argue that either default or preclusive sanctions require a showing that Sentry was prejudiced by defendants' conduct, citing *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, 09–civ–4286, 2011 WL 1453797 (S.D.N.Y.2011). (Def. Mem. 17, Dkt. No. 184). A showing of prejudice is always powerful, but, as *UBS* demonstrates, is hardly essential. *UBS* itself imposed a sanction of preclusion against noncompliant defendants on a claim related to their failure to produce documents, even without a showing of prejudice.[6] In that respect, *UBS* is on all-fours with the determination recommended by Judge Mann. Indeed, *UBS* does not foreclose the adoption of the alternative default judgment recommendation; the Second Circuit has conclusively held that prejudice need not be shown in order to sustain even that ultimate sanction when supported by the record. *See S. New England Tel. Co.*, 624 F.3d at 148–49 (citing *Nat'l Hockey League*, 427 U.S. at 639, 96 S.Ct. 2778). Moreover, even if a showing of prejudice *were* required to support these sanctions, this Court is most satisfied, upon *de novo* review of the record, that Sentry has been prejudiced, substantively and practically, by defendants' willful conduct, obstruction, obfuscation, and dissembling.

Finally, defendants accuse Judge Mann of bias and misrepresentation of fact. *E.g.* (Def. Mem. 9, Dkt. No. 184 ("the Magistrate issued a Memorandum and Order, the language of which reflected less than an objective and impartial analysis.") (internal citations omitted)). By and large, defendants'

---

5. Defendants note that Sentry seeks a judgment in excess of $9 million against them and suggest, therefore, that sanctions bearing on the outcome of this case would be incommensurate to any offense committed. *See* (Def. Mem. 14–15, Dkt. No. 193). But, the question of commensurability is concerned with meeting defendant conduct with an appropriate penalty, not with the amount in controversy. Parties do not become less culpable for their behavior because more money is at stake. Even an entry of default against defendants, were it deemed appropriate in response to defendants' misconduct, would not summarily deprive defendants of $9 million, as defendants suggest; an inquest on damages would follow. But, with the less severe sanction the Court adopts, there is an additional buffer to the award of damages. Damages could only be awarded *after* it had been determined that one or more of the defendants had breached a contract with Sentry.

6. It bears noting that defendants, still playing the same dissembling tune on their banjo, directly quote large sections of *UBS* but truncate their excerpt to omit the following, conclusive sentence: "The appropriate remedy, then, is to preclude the MUSP Defendants from asserting that the funds in the subject UBS accounts are in any way related to any advances that the MUSP Defendants may have made on behalf of Itete Brasil." *UBS*, 2011 WL 1453797, at *4.

recitations amount to quibbling of no real consequence. For example, they assert that "the Magistrate had no basis whatsoever to assume that I had left at 2:37 P.M. when I in fact remained until 2:50 P.M." (*Id.*) (also taking issue with Judge Mann's use of the word "reportedly" when noting that defense counsel was "reportedly ... about to leave on vacation"). The Court, in conducting its *de novo* review of the record, finds no instance of bias, nor any error in her conclusions. That a party is unhappy with a judge's findings, after her consideration of the record, and points to the analysis underlying her findings as evidence of bias, has zero probative value in showing bias or impropriety.

In sum, the objections interposed by defendants are meritless. The Court finds ample reason, on *de novo* review, to accept Judge Mann's findings. In considering her alternative recommended sanctions—of issue preclusion as opposed to entry of default judgment—the Court concurs with Judge Mann that, "[s]ince most of the delayed and/or outstanding discovery relates to the Insured Weber Entities, and, thus, Sentry's alter ego claim, this Court would be justified in entering an order precluding defendants from offering evidence opposing Sentry's alter ego claim." (Mem. & Order, Mann, M.J. 14–15, Dkt. No. 160). The recommended relief is just, well-tailored to the misconduct of defendants, and supported by the record. The sanction comes after more than fair warning. It is the relief the Court orders.

### Conclusion

Upon *de novo* review, the Court finds no clear error in Judge Mann's Report and Recommendation. Very much to the contrary, the Court finds itself in full agreement with Judge Mann's analysis, reasoning, and with her conclusion that defendants and their counsel have more-than-earned the recommended sanctions. Consequently, the Court orders that defendants shall be precluded from offering evidence opposing Sentry's alter ego claim, for the purposes of both summary judgment and trial. To the end that

Judge Mann's R & R reaches this result, it is adopted as the opinion of the Court. Likewise, the monetary sanction, in the amount agreed upon by the parties, is also affirmed.

SO ORDERED.

## REPORT AND RECOMMENDATION

ROANNE L. MANN, United States Magistrate Judge:

Over the past year, defendants Budget Services, Inc. ("Budget") and Hershel Weber ("Weber") (collectively, "defendants") have continuously flouted this Court's discovery orders, resulting in multiple monetary sanctions against them and numerous warnings that harsh sanctions would be imposed in response to further violations. In a Memorandum and Order issued on December 19, 2012, this Court deferred consideration of a more severe sanction, pending defendants' submission of supplemental material. Thereafter, defendants continued to violate this Court's orders, prompting plaintiff Sentry Insurance A Mutual Company ("Sentry") to file yet another motion for sanctions. *See* Plaintiff's Motion for Sanctions (Jan. 9, 2013) ("Pl. 1/9/13 Mot."), Electronic Case Filing ("ECF") Docket Entry ("DE") # 166.

For the reasons stated below, this Court recommends that the District Court either prohibit defendants from opposing Sentry's alter ego claim at trial and/or on summary judgment, or, in the alternative, strike Budget's and Weber's answers and enter default judgments against them. The Court further finds that defendants violated additional court orders and it therefore directs defendants to pay a portion of Sentry's fees and costs incurred in bringing the instant motion.

## BACKGROUND

These cases arise out of two Workers' Compensation policies (the "Policies") that Sentry issued to Budget and a related entity called Brand Management, Inc. ("Brand"), which is the defendant in the first-filed of these two consolidated actions.[1] The Court

---

1. Unless otherwise indicated, all ECF references in this Report and Recommendation relate to the docket in the first action, *Sentry v. Brand Man-*

*agement*, 10–CV–347 (ENV) (hereinafter, the "Brand Action"). Although the instant motion relates to the second-filed action, *Sentry v. Bud-*

previously set forth a detailed procedural history of these actions in its August 10, 2012 Memorandum and Order ("8/10/12 M & O"), *see* DE # 137, which resolved, among other things, a series of disputes that occurred during the final few months of discovery in the Budget Action. Below, the Court recounts the history relevant to the current motion.

## I. The 8/10/12 M & O Addressing Defendants' Violation of the 2/1/12 Order

On March 30, 2012, Sentry moved for sanctions and a compulsion order against Weber and Budget (the "3/30/12 Sanctions Motion"). *See* 8/10/12 M & O at 8–11. The 3/30/12 Sanctions Motion was based on defendants' alleged failure to produce discovery in compliance with this Court's compulsion order of February 1, 2012 (the "2/1/12 Order"), DE # 32 in Budget Action, 11–CV–3966. *See* 8/10/12 M & O at 8–11. The 2/1/12 Order had directed defendants to produce, among other things, documents related to non-party entities that were associated with defendant Weber and that were insured under the Policies (collectively referred to as the "Insured Weber Entities"), "the contract between Brand and Budget," and "redacted copies of Weber's and Budget's tax returns"; in addition, the 2/1/12 Order had directed Weber, to the extent he claimed not to have possession, custody or control of any of the demanded documents, to file a sworn statement so attesting. *See* 8/10/12 M & O at 8.

Thereafter, in its 8/10/12 M & O, the Court concluded that defendants had violated the 2/1/12 Order. *See* 8/10/12 M & O. First, defendants had not timely produced documents related to the Insured Weber Entities, and their minimal production was woefully inadequate. *See id.* at 9–10. Nor had Weber produced his redacted tax returns or an affidavit concerning his discovery compliance, as directed by the Court. *See id.* at 9. Having concluded that Weber and Budget

willfully violated the Court's 2/1/12 Order, the Court directed them, by August 22, 2012, to: (1) fully comply with the 2/1/12 Order, including the production of Weber's redacted tax returns; (2) "provide an affidavit or affirmation [by Weber] attesting to the fact that he has produced all responsive documents in his possession, control or custody" (hereinafter, the "Weber Affidavit"); and (3) produce "any contract (whether or not presently in force) between Budget and Brand." *See* 8/10/12 M & O at 10. "If no contract ever existed," Weber was required to attest to that fact in his sworn statement. *See id.* The Court warned defendants that they were to comply with the 8/10/12 M & O "[o]n pain of sanctions, including but not limited to monetary sanctions and/or entry of default judgments against them." *Id.*

As a result of defendants' blatant and unjustified violation of the 2/1/12 Order, this Court awarded Sentry the attorney's fees and costs it had incurred as a result of defendants' noncompliance.[2]

## II. The 9/10/12 M & O Addressing Defendants' Violation of the 8/10/12 M & O

Defendants failed to comply with the Court's 8/10/12 M & O. *See, e.g.,* Sentry's Letter Regarding Defendants' August 22 Letter (Aug. 23, 2012), DE # 143; Defendants' Letter Responding to Sentry's August 23 Letter (Aug. 23, 2012), DE # 144. In particular, the Weber Affidavit mandated by the 8/10/12 M & O, although dated the day it was due (i.e., August 22, 2012), was not furnished to Sentry until September 5, 2012. *See* Letter Motion for Discovery and Sanctions (Oct. 18, 2012) ("10/18/12 Mot.") at 2 n. 2. Moreover, defendants took it upon themselves, without seeking leave of the Court, to make available a *partial* production of the documents required under the 8/10/12 M & O on August 22, 2012, but declined to release them that day for copying. *See* Memoran-

---

get, 11–CV–3966 (ENV) (hereinafter the "Budget Action"), the two cases have been consolidated, and Sentry therefore filed its motion in the Brand Action.

**2.** The 8/10/12 M & O directed the parties to confer regarding a reasonable amount of legal fees, so as to avoid further motion practice. *See*

8/10/12 M & O at 11. The parties were apparently unable to reach agreement, and, accordingly, Sentry moved for fees on August 27, 2012. *See* Letter Motion for Attorney Fees (Aug. 27, 2012), DE # 145. That motion remains *sub judice.*

dum and Order (Sept. 10, 2012) ("9/10/12 M & O") at 3, DE # 152. As detailed in this Court's September 10, 2012 Memorandum and Order, defendants did not act in good faith and delayed releasing that partial production for another two weeks, *See id.* at 2–3, and eventually had to be compelled by this Court—*again* "on pain of sanctions"—to produce *all* documents responsive to the Court's 8/10/12 M & O by the close of business on September 10, 2012, nearly three weeks after the previous court-imposed deadline. *See* 9/10/12 M & O at 3–4.

### III. The 12/19/12 M & O Addressing Defendants' Continuing Violation of the 8/10/12 M & O

On October 18, 2012, Sentry moved for sanctions and a compulsion order against defendants for their continuing violation of the Court's 8/10/12 M & O. *See* 10/18/12 Mot. at 1. The primary target of Sentry's motion was the Weber Affidavit, which, in addition to its belated production, did not, according to Sentry, contain all of the information required by the 8/10/12 M & O. *See* 10/18/12 Mot. at 1–3. Sentry also pointed to inconsistencies between the Weber Affidavit and other discovery responses provided by defendants concerning Weber's interest in certain of the Insured Weber Entities. *See id.* at 3. Finally, Sentry contended that Weber had failed to produce the tax returns and other financial documents for the Insured Weber Entities, in contravention of the 8/10/12 M & O. *See* 10/18/12 Mot. at 4–5.

On December 19, 2012, this Court issued another Memorandum and Order, in which it found that defendants had continued to willfully violate this Court's 8/10/12 M & O. *See* Memorandum and Order (Dec. 19, 2012) ("12/19/12 M & O"), DE # 160. In so holding, the Court specifically noted that the Weber Affidavit was noncompliant, in that it

did not include, among other things, a statement attesting to the fact that no contract exists or ever existed between Brand and Budget, which had been an express requirement of the 8/10/12 M & O. *See* 12/19/12 M & O at 8. Nor did the Weber Affidavit confirm the existence or location of the tax returns of each Insured Weber Entity. *See id.* In addition, the Court found that the Weber Affidavit contained incomplete, evasive responses, which, given the history of defendants' dilatory tactics, gave the Court reason to doubt that defendants had in fact produced all responsive documents in their possession, control, or custody. *See id.* at 9. Indeed, portions of the Weber Affidavit contradicted earlier claims by Weber in other sworn discovery responses concerning his interest, if any, in certain Insured Weber Entities, further casting doubt on Weber's credibility. *See id.*

Due to the aforementioned problems with the Weber Affidavit, the Court ordered clarification from Weber, as the severity of the Court's sanction would necessarily depend on the scope of defendants' violations. *See id.* at 10. It therefore directed Weber to file a supplemental affidavit by December 27, 2012 (hereinafter, the "Supplemental Weber Affidavit"). *See id.* In doing so, the Court reminded defendants that it had previously warned "that further noncompliance would result in harsh sanctions" and that, in particular, the Court was considering, in addition to the monetary sanctions being awarded to Sentry, "entering an order precluding defendants from offering evidence opposing Sentry's alter ego claim." *See id.* at 14. "If the supplemental affidavit [was] unsatisfactory or untimely, the Court [would] revisit the issue of a preclusion order sanction." *Id.*[3]

Finally, the 12/19/12 M & O also required defendants to turn over, by December 21, 2012, a USB disk[4] containing additional doc-

---

**3.** While deferring decision on whether to issue a preclusion order, the Court did find that defendants and their counsel were jointly and severally liable for the fees incurred by Sentry in making its October 18, 2012 motion for sanctions. *See* 12/19/12 M & O at 12–13 (citing Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure). The parties ultimately agreed on the fee amount without further court intervention. *See*

Letter to Court re Fee Award Agreement (Jan. 11,2013), DE# 171.

**4.** Defendants complain that the Court erred in referring to the USB "disk" as a USB "key" in its 12/19/12 M & O. *See* Reply in Opposition (Jan. 23, 2013) ("Def. 1/23/13 Opp.") at 3, DE # 175. It is the Court's understanding that USB flash drives used to store files are more commonly referred *to* as USB drives or keys, rather than

uments, which Sentry's copy service had inadvertently overlooked in copying defendants' files,[5] as well as "any other documents previously withheld but required to be produced by the 8/10/12 and 2/1/12 Orders." *See* 12/19/12 M & O at 17. Defendants were also directed to produce, by January 4, 2013, payroll documents that had been previously produced on inaccessible compact discs. *See id.*

## IV. The 12/27/12 M & O Addressing Defendants' Violation of the 12/19/12 M & O

On December 26, 2012, defendants wrote to the Court and asserted that it was "impossible" to comply with the deadlines set forth in the Court's 12/19/12 M & O. *See* Motion for Extension of Time to Reply (Dec. 26, 2012), DE # 161. In addition, defendants noted that a partial production of documents was being made that day, December 26, 2012, and that an unspecified number of additional documents were being assembled; however, defendants gave no indication of the volume of documents, or the length of time needed to prepare them for production. *See id.* at 2.

On December 27, 2012, the Court issued yet another Memorandum and Order, in which it noted that defendants were "already in violation of the Court's [12/19/12] Order," and "decline[d] to condone defendants' continued delays by adopting their proposed extended deadlines." *See* Memorandum and Order (Dec. 27, 2012) ("12/27/12 M & O") at 3, DE # 163. The Court granted in limited part defendants' request for an extension of time; in doing so, the Court rejected defendants' characterization of the Court's deadlines as "impossible," noting that, "[t]o the extent that defendants must now hastily assemble and review records that they should have disgorged long ago, that is a problem of their own making." *Id.* at 2. Importantly, the Court found that defendants had ignored the Court's order that all documents previously withheld be produced by December 21, 2012. *See* 12/27/12 M & O at 3. Ultimately, the Court granted defendants a limited extension for "all of the discovery directed to be produced in December" (i.e., the USB disk, the Supplemental Weber Affidavit and any withheld documents), until noon on January 3, 2013. *See id.* The Court, however, adhered to its January 4, 2013 deadline for the payroll records contained on the unreadable compact discs. If defendants failed to comply with the new dates set forth in the 12/27/12 M & O, the Court warned that it would "impose severe sanctions, including but not limited to monetary sanctions." *See id.*

By noon on January 3, 2013, defendants provided Sentry with the Supplemental Weber Affidavit and 75,000 pages of previously withheld documents. *See* Pl. 1/9/13 Mot. at 2. Later that afternoon, defendants provided Sentry with almost 49,000 additional pages of previously withheld material. *See id.* Although the defendants were directed to turn over, by January 4, 2013, the payroll documents contained on the inaccessible compact discs, they still had not done so as of January 8, 2013. *See id.* 2 n. 2.

## V. The Current Motion for Sanctions

On January 9, 2013, Sentry filed a motion seeking additional sanctions against defendants, based on their untimely and improper response to the 12/19/12 M & O and 12/27/12 M & O. *See generally* Pl. 1/9/13 Mot.

Defendants failed to file a timely opposition to Sentry's 1/9/13 Motion. *Compare* Def. 1/23/13 Opp., *with* E.D.N.Y. Local Civ. R. 37.3(c) (any opposition to a letter requesting relief in a discovery dispute should be submitted "[w]ithin four days of receiving such a letter"). Although entitled to ignore defendants' belated submission, the Court will consider the arguments therein.[6]

---

5. Sentry informed defendants of the omission and requested, on September 19, 2012, that the USB key be produced, but defendants never responded. *See* 10/18/12 Mot. at 4 n. 8.

6. On January 9, 2013, defendants requested that their time to oppose Sentry's motion be extended from January 14, 2013 until January 28, 2013 "due to prior commitments." *See* Motion for

---

disks. *See* PC Mag Online Encyclopedia, www. pcmag.com/encyclopedia_term/0,1237,t=USB+ drive&i=53532,00.asp (last visited February 6, 2013) (noting that "flash", "key" and "drive" are. used to refer to USB drives). Nevertheless, in this opinion, the Court will employ the defendants' term, "USB disk."

## DISCUSSION

As an initial matter, there are two different determinations presently before the Court. First, the Court will revisit the issue that was deferred in its 12/19/12 M & O—to wit, what additional sanction, if any, should be imposed on defendants for their violation of the 8/10/12 M & O, taking into consideration, among other things, the Supplemental Weber Affidavit. Second, the Court will consider whether defendants additionally violated the 12/19/12 M & O and 12/27/12 M & O, and, if so, what sanctions, if any, are warranted for those violations. *See* Pl. 1/9/13 Mot. at 7 (requesting that the Court, in light of defendants' latest violation, "enter an order that precludes any opposition to Sentry's alter-ego claim, and impose any further sanctions against the [defendants] that the Court deems just").

### A. The Appropriate Sanction for Defendants' Violation of the 8/10/12 M & O

In opposition to Sentry's 10/18/12 motion to compel compliance with the 8/10/12 M & O, defense counsel assured this Court that, as of November 12, 2012, "Weber and Budget have provided to Sentry all of the documents in their possession, custody and control responsive to the document demands and the prior Orders of this Court." *See* Memorandum in Opposition (Nov. 12, 2012) ("Def. 11/12/12 Opp.") at 10, DE # 158. As noted above, the Court ultimately found the original Weber Affidavit to be inadequate and

artfully crafted so as to obscure whether defendants had, in fact, complied with their discovery obligations. *See* 12/19/12 M & O at 9. Therefore, the Court deferred deciding whether to impose a preclusion sanction against defendants until such time as defendants filed the Supplemental Weber Affidavit. *See id.* at 10.

Following the Court's 12/19/12 M & O, defendants provided the Supplemental Weber Affidavit to Sentry's counsel, *see* DE # 166-1, but, despite the Court's directive in the 12/19/12 M & O, failed to file it with the Court. *See* Pl. 1/9/13 Mot. at 2. In addition to the Supplemental Weber Affidavit, defendants produced, on January 3, 2013, nearly 124,000 pages of previously unproduced responsive documents. *See id.* Sentry nevertheless found defendants' latest production and the Supplemental Weber Affidavit to be inadequate and filed the instant motion, prompting defendants to produce, on January 22, 2013, more than 200 banker's boxes worth of additional documents.[7] Thus, defendants' assertion in November 2012 that they had produced all responsive documents rings hollow and smacks of bad faith. Moreover, the Supplemental Weber Affidavit does not contain a statement attesting to the current or past existence of a contract between Budget and Brand, although such a statement was required by the Court in its 8/10/12 M & O. In its 12/19/12 M & O, the Court admonished defendants for failing to include this statement in the Weber Affidavit. *See* 12/19/12 M & O at 7–8.[8]

Extension of Time (Jan. 9, 2013), DE # 167. The Court denied defendants' motion without prejudice, as defense counsel had violated the Court's Individual Rules requiring that he seek Sentry's consent prior to making the application. *See* Endorsed Order (Jan. 10, 2013), DE # 168. Defendants did not resubmit a request for an extension or time, but rather took it upon themselves to submit an opposition nine days late.

7. In their opposition to the pending motion, defendants blame Sentry's counsel for the belated nature of defendants' voluminous production of January 22, 2013; they complain that Sentry's counsel failed to timely respond to defense counsel's calls regarding that production. *See* Def. 1/23/13 Opp. at 6–7. On reply, Sentry clarifies the relevant timeline. *See* Reply to Response to Motion (Jan. 28, 2013) ("Pl. Reply") at 3 n. 4, DE # 177. Apparently, counsel *for defendants* did

not call regarding this production until January 14, 2013—eleven days beyond the already-extended due date set forth in the Court's 12/27/12 M & O. *See* Pl. Reply at 3 n. 4.

8. Focusing on only one portion of the 12/19/12 M & O, and ignoring others, defendants now argue that the Supplemental Weber Affidavit "followed the precise language required by this Court," and they thereby falsely imply that the 12/19/12 M & O did not require that the Supplemental Weber Affidavit include the previously omitted Budget–Brand contract statement *See* Def. 1/23/13 Opp. at 6. In fact, the 12/19/12 M & O did direct that any and all errors in the Weber Affidavit be corrected, *see* 12/19/12 M & O at 10, and pointedly found that the Weber Affidavit erroneously failed to include the requisite contract statement. *Id.* at 7–8. Moreover, since Sentry filed its most recent motion for sanctions, Weber has now filed

To put defendants' obfuscation in proper context, it is helpful to follow one particular document request from initial demand until production. On March 16, 2012, Sentry demanded that defendants produce "all bank statements, cancelled checks, and deposit slips for any business accounts maintained, either individually or jointly, by [Weber] or any Weber Entity Insured." *See* Document Request 8, Second Request for Production of Documents to Defendant Hershel Weber ("Document Request 8") at 8, DE # 87. When this Court, in its 8/10/12 M & O, directed defendants to turn over those documents, Weber submitted the initial Weber Affidavit, in which he attested to the following:

> With respect to Document Request numbers 8 and 9, there are no such bank statements or business credit card accounts maintained for which production has been demanded.

Weber Affidavit ¶ 20, DE # 153–2 at 9.

Despite claiming that no bank statements existed, Weber did not specifically deny the existence of any business account maintained by the Insured Weber Entities. In the Supplemental Weber Affidavit, however, signed and notarized on December 27, 2012, Weber stated the following with respect to Document Request No. 8:

> Supplementing my response [ ] of my Prior Affidavit, there were no such bank account[s] ever maintained nor were there any such credit card accounts maintained at any time.

Supplemental Weber Affidavit ¶ 19.

In its pending 1/9/13 Motion, Sentry questions the veracity of this latest statement, and points to the fact that cash disbursement records produced by at least one Insured Weber Entity, County Agency, reflect that County Agency issued checks and maintained a corresponding bank account. *See* Pl. 1/9/13 Mot. at 3; County Agency Check Register, DE # 166–3. Faced with this evidence, on January 22, 2013, defendants produced more than 200 boxes of documents, which "primarily consisted of original bank statements[.]" *See* 1/23/13 Weber Affidavit ¶ 4, DE # 175–1; *but see* Affidavit of Jacob Rosenberg (Jan. 23, 2013) ("1/23/13 Rosenberg Affidavit") ¶ 6, DE # 175–2 (stating that the boxes delivered on January 22, 2013 "primarily consisted of payroll records").[9]

Defendants lamely characterize their failure to comply with their discovery obligations as "innocent errors." *See* Def. 1/23/13 Opp. at 3 (comparing defendants' unspecified "errors" with Sentry's erroneous ECF citation); *id.* at 3 n. 4 (arguing that, "with so many documents and so many items docketed, mere mortals will make an occasional error or mistake," citing the Court's "error" in referring to the USB disk as a USB key). This is the first time defendants have claimed that a misunderstanding or error caused them to blatantly ignore this Court's discovery orders. For example, defendants never claimed that some mistake or error led them to ignore this Court's 2/1/12 Order to produce Weber's federal tax returns for nearly six months. Nor did defendants allege that some "innocent error" led them to disregard this Court's 2/1/12 Order that Weber produce an affidavit, which the Court was constrained to repeat in its 8/10/12 Order.

Defendants also devote a substantial portion of their opposition to discounting the merits of Sentry's alter ego claim. *See* Def. 1/23/13 Opp. at 1 (Sentry's alter ego claim "is specious at best"); *id.* at 5 (same); *id.* at 6 (same). In this regard, defendants assert, without citation to supporting case law, that because Sentry knew of various intercorporate loans between Budget and the Insured Weber Entities at the time Sentry issued the Policies, Sentry cannot now assert a viable alter ego claim. *See* Def. 1/23/13 Opp. at 5, 6. Defendants overlook the fact that intercorporate loans are not, on their face, improper,

---

a new affidavit containing the requisite statement. *See* Affidavit of Hershel Weber (Jan. 23, 2013) ("1/23/13 Weber Affidavit") ¶ 2, DE # 175–1. The Supplemental Weber Affidavit's earlier omission, however, is telling with respect to defendants' continued bad faith in this process.

9. Both affidavits submitted in connection with defendants' January 23, 2013 opposition to the current motion for sanctions have been executed with an electronic notary signature. *See* 1/23/13 Weber Affidavit at 8; 1/23/13 Rosenberg Affidavit at 3.

and constitute only one aspect of a multi-faceted alter ego analysis. In any event, whatever defendants' views of the merits of Sentry's alter ego claim, they were not entitled, on that basis, to unilaterally withhold vast quantities of material. Indeed, "[a]s long as [defendants] fail[ ] to comply with discovery orders, the merits of th[e] case elude determination." *Nieves v. City of N.Y.*, 208 F.R.D. 531, 536 (S.D.N.Y.2002) (imposing sanction of dismissal where disobedient party's "continued refusal to permit discovery has protracted this litigation beyond its natural life").

Defendants also question the relevance of Sentry's requested documents. See Def. 1/23/13 Opp. at 7 ("[T]he payroll of the clients of the Weber insured entities are entirely unrelated to any of the issues before this Court."). As for relevance concerns, the Court previously ruled that the requested documents were relevant, *see* 8/10/12 M & O at 21–23, and defendants opted not to file any objection to that ruling. Instead, defendants apparently decided that a better strategy was to play hide-the-ball and outright deny that certain documents existed.[10]

In view of the protracted history of defendants' violations and evasions, ample basis exists for issuing a preclusion order prohibiting defendants from offering evidence opposing Sentry's alter ego claim. Pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure ("FRCP"), a court may sanction a party who fails to obey an order to provide or permit discovery. *See* Fed.R.Civ.P. 37(b)(2). Courts enjoy broad discretion in fashioning appropriate sanctions. *See, e.g., Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir.1991). Among the discovery sanctions awardable under Rule 37

are the following: dismissal of an action, striking of the pleadings, "rendering a default judgment against the disobedient party," or "prohibiting the disobedient party from supporting or opposing designated claims or defenses." *See* Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii).

The Second Circuit has noted that harsh sanctions, such as dismissal, default judgments and preclusion orders, are to be imposed only in extreme situations. *See, e.g., Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir.2009); *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir.1988) ("The harshest sanctions available are preclusion of evidence and dismissal of the action."). Nevertheless, "[a] party who flouts [discovery] orders does so at his own peril[,]" as compliance with discovery orders is "necessary to the integrity of our judicial process." *See Update Art*, 843 F.2d at 72–73 (affirming magistrate judge's preclusion sanction where disobedient parties "unjustifiably failed to comply with the magistrate's reasonable orders compelling discovery").

In deciding which sanction to impose, courts consider: (1) the willfulness of the acts of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the noncompliant party had been warned of the consequences of noncompliance. *See Agiwal*, 555 F.3d at 302–03; *accord Brill v. Queens Lumber Co.*, No. 10 CV 1975(DLI), 2012 WL 441287, at *3 (E.D.N.Y. Feb. 10, 2012).

Having weighed the above factors, the Court concludes that a preclusion order barring evidence opposing Sentry's alter ego claim is amply warranted. First, defendants

---

**10.** Seeking to explain away the discrepancy between his two previous sworn statements that no Insured Weber Entities maintained bank accounts and the January 22, 2013 production of the Insured Weber Entities' bank records, Weber claims that he had assumed that Document Request No. 8 applied only to accounts held jointly by Weber and an Insured Weber Entity. *See* 1/23/13 Weber Aff. ¶ 13. The Court rejects this explanation for two reasons. First, the language employed in Document Request No. 8—"business accounts maintained, either individually or jointly, by [Weber] or any Weber Entity Insured"—makes clear that defendants sought

statements for bank accounts owned by Weber or any Insured Weber Entity, whether those accounts were owned "individually or jointly." *See* Document Request No. 8. More importantly, Sentry repeatedly complained that the Insured Weber Entities had produced no bank account records and, thus, the meaning and intent of Document Request 8 was evident. *See, e.g.,* 10/18/12 Mot. at 4; Sentry's Reply to Motion (Apr. 17, 2012) at 4, DE # 107 ("Weber and Budget have not produced any checks or bank statements from any of the other Weber Entities that, in addition to Budget and Brand, received coverage under the Policies issued by Sentry.").

have never articulated any credible explanation whatsoever for their failure to comply with the 2/1/12 Order, 8/10/12 M & O, and/or 9/10/12 M & O. On the contrary, as of November 2012, defendants insisted that they had produced all responsive documents. *See* Def. 11/12/12 Opp. at 10. Defendants' willfulness and bad faith in disregarding this Court's orders are evident from their repeated violations and dubious claim that they produced all responsive documents—a claim that was belied by their recent, belated, voluminous production of previously withheld documents. *See In re Tartaglione*, No. 04 B 22783(ASH), 2008 WL 336844, at *7 (S.D.N.Y. Feb. 5, 2008) (finding willfulness where disobedient party "repeatedly failed to produce critical documents or respond to proper document requests and interrogatories, and there was reason to doubt his credibility and forthrightness"); *see also Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y.2002) ("[A] party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad fault or fault.") (internal quotations and citation omitted).

Second, as made clear by the procedural history cited above, lesser sanctions have not been effective. Monetary sanctions were twice imposed on defendants, and once on defendants' counsel, to no avail. *See* discussion *supra* pp. 3–4; 8/10/12 M & O at 11; 12/19/12 M & O at 13. Thus, monetary sanctions were not sufficient to deter defendants' persistent disregard of this Court's orders.

Third, the duration of the period of noncompliance weighs heavily in favor of a harsh sanction. The Court first ordered the production of much of this discovery in its 2/1/12 Order. Over the past year, defendants have either outright ignored court orders, *see* 8/10/12 M & O at 9 (defendants failed to produce tax returns), or have filed inadequate and incomplete responses. *See, e.g.,* 12/19/12 M & O at 9–10. In total, by the time the Court issued its 12/19/12 M & O, defendants had violated three court orders, and it took defendants almost a year to substantially complete their production.

Fourth, defendants have repeatedly been warned of the consequences of noncompliance. They have been told in general terms that noncompliance would result in sanctions, see 9/10/12 M & O at 4, and have been specifically warned that noncompliance would result in a "default judgment" or "contempt," *see* 8/10/12 M & O at 10, as well as an order prohibiting defendants from opposing Sentry's alter ego claim. *See* 12/19/12 M & O at 14.

Finally, in urging this Court not to impose a harsh sanction, defendants contend that Sentry has not been prejudiced by any noncompliance or delay in producing discovery and that any arguable prejudice has been cured by the remedies previously granted by this Court. *See* Def. 1/23/13 Opp. at 2–3 (citing *USB Int'l, Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, Nos. 09 Civ. 4286, 09 Civ. 10004(LAK)(JCF), 2011 WL 1453797, at *3 (S.D.N.Y. Apr. 11, 2011)). In assuming that the absence of prejudice constitutes a bar to the imposition of a severe sanction under Rule 37, defendants cite a single case, which in turn relied on a 2000 Second Circuit case, *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 63 (2d Cir. 2000), that discussed prejudice in the context of dismissal for lack of prosecution under Rule 41(b) of the FRCP, not Rule 37. Contrary to the premise of defendants' argument, the Second Circuit has made clear that prejudice is not a prerequisite for severe sanctions under Rule 37, including entry of a default judgment. *See S. New England Tel. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 148–49 (2d Cir.2010) ("Even if [plaintiff] had suffered no prejudice from [defendant's] conduct, however, we, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions[.]"). As the Second Circuit reiterated in that same case:

> [I]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules. Moreover, ... compulsion of performance in the particular case at hand is

not the sole function of Rule 37 sanctions. Under the deterrence principle of *Nat'l Hockey League [v. Metro. Hockey Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) ], plaintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.

624 F.3d at 149 (quotations and citation omitted).[11]

Consequently, this Court recommends that the District Court prohibit defendants from presenting evidence opposing Sentry's alter ego claim at trial and/or on summary judgment. *See, e.g., Daval Steel,* 951 F.2d at 1367 ("Although an order ... precluding a party from presenting evidence in opposition to [a claim] is strong medicine, such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators."); *Rodriguez v. Ortiz,* No. 92 Civ. 1385(DC), 1995 WL 728438, at *2 (S.D.N.Y. Dec. 8, 1995) (holding that an order of preclusion was appropriate where parties "displayed a pattern of dilatory conduct in conducting discovery" and failed to comply with clearly articulated orders).

 Indeed, based upon the history of defendants' noncompliance and dissembling, even absent Sentry's specific request for default judgments granting such relief, the District Court would be justified in striking defendants' answers and entering default judgments against them. *See* 8/10/12 M & O at 10 (warning defendants that failure to comply with the 8/10/12 M & O could result in a "default judgment"); *see also Integrity Elecs., Inc. v. Garden State Distribs., Inc.,* No. 09 CV 2367(ILG), 2012 WL 1041831, at

*5 (E.D.N.Y. Jan. 6, 2012) (recommending that default judgments be entered, or that defendants be precluded from offering evidence in opposition to plaintiff's claims, where defendants "failed to comply in a timely or adequate fashion" to court orders and where their "behavior throughout th[e] case [wa]s consistent with a deliberate strategy to delay and frustrate the[ ] proceedings"), *adopted,* 2012 WL 1041349 (E.D.N.Y. Mar. 28, 2012); *cf. John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1177 (2d Cir.1988) (the "flagrant disregard of court orders" justified the imposition of the sanction of dismissal).[12]

## B. Defendants Violated the 12/19/12 M & O and 12/27/12 M & O

The Court's conclusion as to an appropriate sanction arising out of defendants' violation of the 8/10/12 M & O is buttressed by defendants' subsequent violations of this Court's orders. While it is true that defendants requested additional time to comply with the 12/19/12 M & O, at the point at which defendants made their request, they were already delinquent, as they had been directed to produce all previously withheld documents, including the USB disk, by December 21, 2012. *See* 12/27/12 M & O at 3 (noting that defendants were already in violation). As a result, in its 12/27/12 M & O, the Court directed that defendants produce all of those materials by noon on January 3, 2013. *See id.*

Defendants failed to timely produce the documents by the extended dates set forth in the 12/27/12 M & O. First, defendants produced previously withheld documents late on the afternoon on January 3, 2013, even though this Court had required production by noon on that day. *See* Pl. 1/9/13 Mot. at 2. Conveniently, defendants claim that a por-

---

**11.** Even if prejudice were a component of a Rule 37 analysis, this Court would not hesitate to find Sentry prejudiced by defendants' delays and obfuscation, within the meaning of the case on which defendants rely. *See UBS Int'l,* 2011 WL 1453797, at *2–3 (prejudice to plaintiff was "obvious," where defendants repeatedly produced insufficient documents in response to motions to compel and, thus, preclusion order was appropriate sanction); *see also In re Tartaglione,* 2008 WL 336844, at *4 ("The fact that [the disobedient

party] eventually provided some sort of response to discovery requests does not preclude the imposition of sanctions.").

**12.** The same four-factor analysis that applies to a Rule 37 sanction for preclusion applies to a Rule 37 sanction for dismissal. *Compare Brill,* 2012 WL 441287, at *3, with *Agiwal,* 555 F.3d at 302–03.

tion of the production was delayed due to a computer crash. *See* Def. 1/23/13 Opp. at 7.

Moreover, defendants were under a court order to provide access, by January 4, 2013, to the payroll records that were contained on the previously produced inaccessible compact discs. *See* 12/19/12 M & O at 11–12. On the evening of January 8, 2013, defendants emailed Sentry a letter that stated that they were providing Sentry with software that would render the compact discs accessible, but, by January 9, 2013, Sentry had not received the software and was still unable to examine the documents. *See* Pl. 1/9/13 Mot. at 2 n. 2.

In their opposition, defendants argue that, as of November 14, 2012, they were diligently attempting to find a way to access the payroll content, and, in support, they proffer evidence of communications with Bank of America, which maintained the payroll records and initially provided defendants with the compact discs. *See* 1/23/13 Rosenberg Affidavit ¶ 4. Despite these efforts, Bank of America reportedly did not send defendants the relevant software until January 7, 2013, *See id.* ¶ 5; however, defendants did not provide Sentry with a working copy of the software until January 18, 2013. *See* Pl. 1/28/13 Reply at 4 n. 6.

Finally, the Supplemental Weber Affidavit was not filed with the Court as directed by the 12/19/12 M & O. Defense counsel claims that he erroneously failed to file it, but notes that he served a copy on Sentry.[13]

It is clear that defendants violated the 12/19/12 M & O and 12/27/12 M & O. To justify their noncompliance, defendants proffer some evidence showing that they attempted to retrieve the payroll documents from the Bank of America. No such evidentiary showing is made with respect to the claimed "computer crash." Even assuming that such a mishap occurred, that might excuse the delay in the January 3, 2013 production by a few hours. However, defendants do not explain why, when faced with third-party and technical delays, they failed to

make a timely request for another extension of time. Moreover, defendants do not substantially justify their failure to produce the more than 200 banker's boxes of documents weeks after they were due. *See* discussion *supra* p. 14 n. 10.

As defendants have failed to substantially justify all of their untimely production, Sentry is entitled to recover a portion of its fees in bringing its 1/9/13 Motion. Rule 37(b)(2)(C) of the FRCP states that if a party fails to obey a court order to provide or permit discovery, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2)(C) (emphasis added). Absent sufficient justification, an award of fees under Rule 37(b) is mandatory. *See John B. Hull, Inc.,* 845 F.2d at 1177; *Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Demo. Rep.,* No. 10 Civ. 5256(KMW), 2011 WL 4111504, at *9–10 & n. 8 (S.D.N.Y. Sept. 13, 2011); *Robbins & Myers, Inc. v. J.M. Huber Corp.,* No. 01–CV–201S(F), 2010 WL 3992215, at *5 (W.D.N.Y. Oct. 12, 2010) (noting that a fee award under Rule 37(b) "is not a matter of judicial discretion, but is required, absent substantial justification"). In this case, some of defendants' latest violations were substantially justified, others were not.

Sentry is directed to confer with defendants in an effort to reach agreement as to a reasonable amount of attorney's fees and costs incurred by Sentry as a result of defendants' failure to comply with the 12/19/12 and 12/27/12 M & Os. After reaching agreement on the total fees and costs, defendants shall pay one-third (1/3) of said amount. If the parties cannot agree on a specific amount, then Sentry may submit an application for fees, with relevant time-records and documented expenses, no later than February 22,

---

**13.** The Court specifically required that the Supplemental Weber Affidavit be filed because, as clearly stated in the 12/19/12 M & O, the Court was deferring decision on what sanction to impose on defendants. Hence, defendants' emphasis on prejudice to Sentry is beside the point; the Court ordered that the Supplemental Weber Affidavit be created for judicial purposes.

2013. Defendants' opposition thereto must be filed by February 28, 2013.

In the event the District Court declines to strike defendants' answers and enter a default judgment, and this case continues, defendants are admonished: if defendants commit any further violations of court orders, this Court will impose additional monetary sanctions and will recommend that default judgments be entered against defendants and/or that defendants be held in contempt of court.

### *CONCLUSION*

For the reasons stated above, this Court respectfully recommends that the District Court enter an order prohibiting defendants Budget and Weber from offering evidence opposing Sentry's alter ego claim at trial or on summary judgment. In the alternative, the Court recommends that defendants' answers in the Budget Action be stricken and default judgments be entered against them for their continuing flagrant disregard of this Court's discovery orders.

In addition, defendants violated the 12/19/12 and 12/27/12 M & Os in several respects, and some of those violations were not substantially justified. Defendants are directed to pay one-third of the reasonable attorney's fees and costs incurred by Sentry in making its 1/9/13 Motion. If the parties require court intervention as to what constitutes a reasonable amount, then Sentry may submit an application for fees, with relevant time-records and documented expenses, no later than February 22, 2013. Defendants' opposition thereto must be filed by February 28, 2013.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Eric N. Vitaliano on or before *February 25, 2013.* Failure to file objections in a timely manner may waive a right to appeal the District Court order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a)(1), 72(b)(2); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system.

**SO ORDERED.**

**Dated: February 7, 2013**