Colby **FIEDLER**, Plaintiff,

v.

**P.O. Michael INCANDELA, P.O. John Focas, P.O. Steven Capparelli, P.O. Dane Flynn, P.O. Richard Yasso, P.O. Stacey Cunneen, P.O. Moira Huggins, Sgt. Christopher Foley, The County of Nassau, and The County of Suffolk, Defendants.**

14–cv–2572 (SJF)(AYS)

United States District Court,
E.D. New York.

Signed 12/06/2016

Edward Sivin, Clelia Douyon, Glenn D. Miller, Sivin & Miller, LLP, New York, NY, Ameer Nadav Benno, Benno & Associates P.C., New York, NY, for Plaintiff.

Scott J. Kreppein, Quatela, Hargraves & Chimeri PLLC, Hauppauge, NY, Brian C. Mitchell, Hauppauge, NY, for Defendants.

## OPINION AND ORDER

FEUERSTEIN, District Judge:

Plaintiff Colby Fiedler ("Plaintiff" or "Fiedler") commenced this action against Defendants P.O. Michael Incandela, P.O. John Focas, P.O. Steven Capparelli, P.O. Dane Flynn, P.O. Richard Yasso, P.O. Stacey Cunneen, P.O. Moira Huggins, Sgt. Christopher Foley, the County of Nassau, and the County of Suffolk (collectively, "Defendants"), alleging causes of action arising under 42 U.S.C. § 1983 and New York state law. See Docket Entry ("DE") [1]. Presently before the Court are two (2) motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. DE [39], [40]. On December 11, 2015, Defendants Focas, Capparelli, Flynn, Yasso, Cunneen, Huggins, Foley, and the

County of Suffolk (collectively, the "Suffolk County Defendants") filed a motion for summary judgment, which Plaintiff does not oppose. DE [39], [39–17]. On December 14, 2015, Defendants Incandela and the County of Nassau (together, the "Nassau County Defendants") filed a motion for summary judgment, which Plaintiff opposes. DE [40], [40–6]. For the reasons set forth herein, both motions are granted in their entirety.

## I. BACKGROUND

### A. Factual Background

This action arises out of Plaintiff's December 20, 2011 arrest and subsequent criminal prosecution for criminal possession of stolen property in the fifth degree in violation of N.Y. Penal Law § 165.40.[1] See Compl., DE [1], ¶¶1–5. At all relevant times on December 20, 2011, Defendant Incandela was an off-duty police officer for the Nassau County Police Department ("NCPD"). Pl.'s 56.1 Stmt. ¶ 1; Incandela Aff. ¶ 17. The NCPD is an administrative branch of Defendant Nassau County. See Nassau County Defendants' Answer ("Nassau Ans."), DE [20], ¶ 16. At all relevant times, Defendants Focas, Capparelli, Flynn, Yasso, Cunneen, Huggins, and Foley (collectively, the "Individual Suffolk Defendants") were police officers for the Suffolk County Police Department ("SCPD"). See Suffolk County Defendants' Amended Answer ("Suffolk Am. Ans."), DE [22], ¶¶6–12. The SCPD is an adminis-

---

1. Unless otherwise noted, the facts are drawn from the Suffolk County Defendants' Statement Pursuant to Local Rule 56.1 ("Suffolk 56.1 Stmt."), DE [39–3]; the Declaration of Brian C. Mitchell in Support of the Suffolk County Defendants' Motion for Summary Judgment ("Mitchell Decl."), DE [39–2]; the Nassau County Defendants' Rule 56.1 Statement ("Nassau 56.1 Stmt."), DE [40–1]; the Affidavit of Michael Incandela in Support of

the Nassau County Defendants' Motion for Summary Judgment ("Incandela Aff."), DE [40–1]; Plaintiff's Response to Rule 56.1 Statement by Defendants Incandela and County of Nassau ("Pl.'s 56.1 Stmt."), DE [40–5]; and the Declaration of Edward Sivin in Opposition to the Nassau County Defendants' Motion for Summary Judgment ("Sivin Decl."), DE [40–7].

trative branch of Defendant Suffolk County. *Id.* at ¶ 5.

On December 15, 2011, an unidentified individual stole a package from the home of Incandela's girlfriend in Lindenhurst, New York. *See* Incandela Aff. ¶ 4. According to Incandela, surveillance images revealed that the individual who took the package exited "an older grey Kia Optima with a distinctive dent." *Id.* at ¶ 7. Subsequently, while driving to his girlfriend's home on December 20, 2011, Incandela "recognized the vehicle in front of [him] as being the vehicle in the surveillance footage." *Id.* at ¶ 8. It is undisputed that Fiedler was a passenger in the vehicle that Incandela observed on December 20, 2011, and that non-party Vincenzo Francese was driving the vehicle. *See* Pl.'s 56.1 Stmt. ¶ 4; Sivin Decl. Ex. 1 ("Fiedler Aff.") at ¶ 2.

Incandela contacted the SCPD in order to "relay [his] observations to responding officers" and followed the vehicle to 669 South Sixth Street in Lindenhurst. *See* Incandela Aff. ¶¶8, 9; Pl.'s 56.1 Stmt. ¶ 3. According to Incandela, at 669 South Sixth Street, he "observed two individuals, males with dark hair, one relatively skinny and the other stockier, exit the vehicle and unload boxes into the garage." Incandela Aff. ¶ 10. Fiedler disputes unloading packages from the vehicle and claims that, upon arrival at 669 South Sixth Street, he "immediately entered the house" while Francese "remained outside, having told [Fiedler] that he wanted to smoke a cigarette." Fiedler Aff. ¶ 3. According to Fiedler, he "never unloaded, or assisted [Francese] in unloading, anything from [Francese's] vehicle, nor did [he] carry anything into [Francese's] garage or house." *Id.* at ¶ 5. When Fiedler and Francese returned to the vehicle and drove away, Incandela remained on the telephone with the SCPD and followed the

vehicle to 28 Knoll Street, Lindenhurst, New York. Incandela Aff. ¶ 11.

At approximately 3:35 p.m. on December 20, 2011, Defendants Capparelli and Focas responded to 669 South Sixth Street and received voluntary consent from the property owner, Luciano Francese, to search the premises. Suffolk 56.1 Stmt. ¶ 10; Mitchell Decl. Ex. F. According to Capparelli and Focas, "[t]he search resulted in the discovery of packages in the garage that were determined to be stolen." Mitchell Decl. Ex. G ("Capparelli Aff.") at ¶ 4; Mitchell Decl. Ex. J ("Focas Aff.") at ¶ 4. Subsequently, non-parties Danielle De-Maio, Carolyn Shabunia, and Jason Kraft (collectively, the "Property Owners") each completed a Larceny or Criminal Possession of Stolen Property Affidavit stating that they owned the property that was recovered from the garage at 669 South Sixth Street, and that their property was "taken, obtained, or withheld without [their] permission." Mitchell Decl. Exs. B–D. Capparelli and Focas relayed this information to their superior, non-party Sergeant Wayne Hutzel. Capparelli Aff. ¶ 5; Focas Aff. ¶ 5.

Hutzel, along with Defendants Cunneen, Flynn, and Yasso, responded to 28 Knoll Street and spoke to Incandela. *See* Mitchell Decl. Ex. K ("Hutzel Aff.") at ¶ 4; Mitchell Decl. Ex. H. ("Cunneen Aff.") at ¶ 4; Mitchell Decl. Ex. L ("Yasso Aff.") at ¶ 4. Incandela identified Fiedler and Francese as the men he observed moving boxes from the vehicle to the garage at 669 South Sixth Street. *Id.* Based on Capparelli and Focas's determination that the boxes in the garage at 669 South Sixth Street were stolen, along with Incandela's identification of Fiedler and Francese, SCPD officers arrested Fiedler and Francese outside of 28 Knoll Street. *See* Suffolk 56.1 Stmt. ¶¶7–11. As the officers arrested Fiedler and Francese, Incandela remained

in his vehicle parked across the street and observed the SCPD officers handcuff both men and place them in separate police vehicles. Incandela Aff. ¶¶13, 14. It is undisputed that Plaintiff was arrested in Suffolk County by SCPD officers. Pl.'s 56.1 Stmt. ¶¶1, 2.

Following Plaintiff's arrest, Incandela provided a sworn statement to Defendant Focas, in which he stated that, on December 20, 2011, he saw "the same exact vehicle that [he] saw on [his] girlfriend's surveillance video travelling northbound on Shore Rd. towards Montauk Hwy." *See* Nassau 56.1 Stmt. Ex. B ("Incandela Stmt."), DE [40–3], at 1. Incandela further stated, in relevant part:

> I followed the vehicle to 669 S. 6th St., Lindenhurst. I saw the vehicle pull nose in into the driveway and I saw 2 white males exit the vehicle and carry 5 boxes from the trunk of the car into the garage. I then saw both white males go into the back seat of the Kia ... and take out items which they covered up with a towel and brought those items into the house. The 2 males came out of the house, got back into the Kia and drove to 28 Knoll St., Lindenhurst.... When the 2 white males exit[ed] the vehicle I positively identified them as the same 2 white males that unloaded the 5 boxes into the garage at 669 S. 6th St., Lindenhurst. As a matter of fact I never lost sight of the vehicle ... as I followed it from 669 S. 6th St. to 28 Knoll St., Lindenhurst.

*Id.* at 1–2. According to Incandela, after identifying Fiedler and Francese as the individuals who moved the boxes from the vehicle to the garage, he returned to 669 South Sixth Street, where he observed five (5) boxes that were "positively the same boxes [he] saw the 2 males carrying into the garage from the Kia trunk earlier in the day." *Id.* at 2.

On December 20, 2011, Cunneen, Yasso, and Flynn each prepared and signed a Misdemeanor Information charging Plaintiff with criminal possession of stolen property in the fifth degree in violation of N.Y. Penal Law § 165.40. Suffolk 56.1 Stmt. ¶¶1–6. Cunneen, Yasso, and Flynn based their charges on Incandela's December 20, 2011 sworn statement to the SCPD and the Property Owners' Affidavits. *Id.*; *see also* Mitchell Decl. Exs. B–D. According to the Suffolk County Defendants, "[b]etween the time of the plaintiff's arrest and his arraignment, no defendant officer became aware of any information that would lead them to believe that probable cause did not exist for his arrest or that would eliminate probable cause." Suffolk 56.1 Stmt. ¶ 12.

On January 14, 2013, Incandela gave another sworn statement to the SCPD, stating that, "through police investigation," he learned that "one of the people [he] observed carrying boxes from the described vehicle into the garage ... to be Colby Fiedler." Sivin Decl. Ex. 5. According to Plaintiff, following his December 20, 2011 arrest, he "was required to appear in Suffolk County Criminal Court on approximately a dozen occasions in connection with the criminal charges brought against him." Pl.'s 56.1 Stmt. ¶ 10. At a January 24, 2013 hearing, the Suffolk County District Attorney dropped all criminal charges pending against Fiedler, stating that the dismissal was "based upon [a] full and complete investigation into the[ ] cases." *Id.* at ¶ 12.

## B. Procedural Background

On February 21, 2013, Fiedler filed a Notice of Claim against Incandela, Nassau County, and Suffolk County. Sivin Decl. Ex. 8. Plaintiff sought to "recover damages for injuries sustained ... as a result of being maliciously prosecuted by P.O. Michael Incandela and by other members of

the Nassau County Police Department and the Suffolk County Police Department." *Id.* He further sought to recover from "The County of Nassau and The County of Suffolk for negligent hiring, training, supervision, and retention of the aforementioned police officers." *Id.* Fiedler wrote that he "endured and continues to endure conscious pain and suffering, loss of enjoyment of life, humiliation and embarrassment, damage to reputation, and economic loss, all to his damage in the amount of $5,000,000.00." *Id.* According to Plaintiff, "[t]he Notice of Claim was received and acknowledged by the County [of Nassau] on February 25, 2013." *See* Plaintiff's Memorandum of Law in Opposition to Defendants P.O. Michael Incandela's and The County of Nassau's Motion for Summary Judgment ("Pl.'s Opp'n"), DE [40-6], at 3.

By way of a Complaint dated April 22, 2014, Fiedler commenced this action, alleging causes of action arising under 42 U.S.C. § 1983 and New York state law. DE [1]. Against Defendants Incandela, Focas, Capparelli, Flynn, Yasso, Cunneen, Huggins, and Foley (collectively, the "Individual Defendants"), Plaintiff asserts causes of action for: (i) false arrest, malicious prosecution, abuse of process, and conspiracy arising under both 42 U.S.C. § 1983 and New York state law; (ii) common law negligence and gross negligence; and (iii) unreasonable search and seizure in violation of the New York State Constitution. Compl. ¶¶97–132, 138–49, 186–91. Against Nassau County and Suffolk County (together, the "County Defendants"), Plaintiff asserts causes of action for: (i) municipal liability arising under 42 U.S.C. § 1983; (ii) negligent hiring, training, supervision, and retention; and (iii) vicarious liability for the state law torts of the Individual Defendants. *Id.* at ¶¶133–37, 150–85.

On December 11, 2015 the Suffolk County Defendants filed their motion for sum-

mary judgment pursuant to Fed. R. Civ. P. 56. DE [39]. The Suffolk County Defendants argue, *inter alia*, that probable cause existed to arrest and prosecute Plaintiff for criminal possession of stolen property in the fifth degree. *See* Suffolk County Defendants' Memorandum of Law in Support of Motion Pursuant to Rule 56 ("Suffolk Defs.' Mem."), DE [39-4], at 2–3. They further argue that "all defendants are entitled to qualified immunity as there was at least arguable probable cause for the arrest of the plaintiff." *Id.* at 3. In a November 30, 2015 letter, Plaintiff wrote that he "is not opposing the summary judgment motion served by defendants County of Suffolk and the individually named Suffolk County police officers." DE [39-17].

On December 14, 2015, the Nassau County Defendants filed their motion for summary judgment pursuant to Fed. R. Civ. P. 56. DE [40]. According to the Nassau County Defendants, "Nassau County had no involvement whatsoever in the facts or circumstances giving rise to this case." *See* Nassau County Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Nassau Defs.' Mem."), DE [40-1], at 2. They further argue that "Incandela was [a] Nassau County police officer at the time of the occurrences, but was off-duty visiting his girlfriend ... in Suffolk County, and reported information to the local police in the same manner as any other citizen would." *Id.* at 2–3. In opposition, Plaintiff argues that the Nassau County Defendants' motion "should be denied on the merits since plaintiff's proofs raise triable issues of fact as to whether Incandela knowingly made false allegations that resulted in plaintiff's arrest and prosecution." Pl.'s Opp'n at 1. Plaintiff further argues that the Nassau County Defendants' motion should be denied on various procedural grounds. *Id.* at 4–7.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no material facts that preclude judgment as a matter of law. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F.Supp.3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party."). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

## III. DISCUSSION

### A. Plaintiff's Procedural Arguments

Before addressing the merits of Defendants' motions for summary judgment, the Court considers Plaintiff's argument that the Nassau County Defendants' motion should be denied on procedural grounds because: (i) the Nassau County Defendants failed to file a Notice of Motion as required by Local Rule 7.1; (ii) the Nassau County Defendants' Rule 56.1 Statement does not contain citations to admissible evidence; and (iii) Scott J. Kreppein, Esq. lacks standing to move for summary judgment on Incandela's behalf because Kreppein did not file a Notice of Appearance with respect to Incandela. Pl.'s Opp'n at 4–7. For the reasons set forth herein, Plaintiff's procedural arguments do not provide an independent basis for denying the Nassau County Defendants' motion.

#### 1. Failure to Serve a Notice of Motion

Pursuant to Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), "all motions shall include ... [a] notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion." Local Rule 7.1(a). The Second Circuit has held that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). Relevant here, the court has discretion to overlook a failure to

comply with Local Rule 7.1 where the movant submits "a memorandum of law and supporting documents that allow[ ] the Court to consider [the] proposed motion ...." *Gigantino v. Turner Constr. Co.*, No. 14–CV–3619, 2016 WL 5107062, at *1 n.1 (E.D.N.Y. Sept. 19, 2016). Therefore, a motion need not be denied for failure to serve a Notice of Motion so long as the parties are "fairly and adequately apprised of the nature and basis of the application." *Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*, No. 10–CV–347, 2013 WL 5725987, at *2 (E.D.N.Y. Oct. 21, 2013); *see also Dart Mech. Corp. v. Johnson Controls, Inc.*, No. 13–CV–2941, 2015 WL 9050384, at *1 n.3 (E.D.N.Y. Dec. 15, 2015) ("[S]ince the parties were fairly and adequately apprised of the nature and basis of the application, the Court will consider [the plaintiff's] summary judgment motion.") (internal quotation omitted).

■ According to Plaintiff, the Nassau County Defendants "failed to submit a notice of motion in support of their motion for summary judgment" and "the papers that have been submitted ... do not fairly and adequately apprise plaintiff of the scope of the relief they seek."[2] Pl.'s Opp'n at 4. However, in both the Nassau County Defendant's memorandum of law and the Kreppein Affirmation, the Nassau County Defendants "request[ ] that Judgment as a Matter of Law be granted in favor of Defendants Michael Incandela and The County of Nassau, and that Plaintiff's complaint be dismissed in its entirety ...." Nassau Defs.' Mem. at 11; Kreppein Aff. at 2. As the Nassau County Defendants provided notice that they seek dismissal of the Complaint in its entirety, Fiedler was fairly and adequately apprised of the relief sought in the instant motion. *See Sentry Ins. A Mut. Co.*, 2013 WL 5725987, at *2. Therefore, the Nassau County Defendants' failure to serve a Notice of Motion does not provide an independent basis for denying their motion for summary judgment.

## 2. Failure to Cite to Admissible Evidence

■ Pursuant to Local Rule 56.1, a party seeking summary judgment must submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). Local Rule 56.1 further provides that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) ... must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." *Id.* at 56.1(d). The purpose of Local Rule 56.1(d) "is to 'free district courts from the need to hunt through voluminous records without guidance from the parties ....'" *Giannullo v. City of New York*, 322 F.3d 139, 145 (2d Cir. 2003) (quoting *Holtz*, 258 F.3d at 74). The court need not consider as true any fact that is not supported by admissible evidence. *See Whitehurst v. 230 Fifth, Inc.*, 998 F.Supp.2d 233, 260 (S.D.N.Y. 2014). However, the court "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." *Holtz*, 258 F.3d at 73 (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)); *see also Whitehurst*, 998 F.Supp.2d at 260 (considering the merits of a motion for summary judgment where the movant's Rule 56.1

---

**2.** The Nassau County Defendants' fully briefed motion for summary judgment that was filed with the Court on December 14, 2015 includes a Notice of Motion. DE [40]. Therefore, the Court interprets Plaintiff's argument to mean that the Nassau County Defendants' moving papers, which were served on Plaintiff, but not filed with the Court, on October 30, 2015, did not include a Notice of Motion. DE [36].

statement was "stricken from the record and the Court [did] not consider its content").

The Nassau County Defendants fail to cite to admissible evidence in any of the eight (8) paragraphs of their Rule 56.1 Statement. *See* Nassau 56.1 Stmt. ¶¶1–8. According to Plaintiff, the failure to cite to admissible evidence, "coupled with defendants' failure to submit a notice of motion, should result in a denial of the motion." Pl.'s Opp'n at 6. Although the Court does not condone the Nassau County Defendants' blatant disregard for Local Rule 56.1, in light of the "strong preference for resolving disputes on the merits, rather than on the basis of procedural issues," *Pushkin v. Nussbaum*, No. 10 Civ. 9212, 2011 WL 4063493, at *1 (S.D.N.Y. Aug. 12, 2011), as well as the brevity of the Nassau County Defendants' Rule 56.1 Statement, the Court will review the evidence submitted and consider the merits of the Nassau County Defendants' motion.

### 3. Failure to File a Notice of Appearance

Finally, relying upon *Baitey v. Sloly*, No. 07 Civ. 9469, 2008 U.S. Dist. LEXIS 113153 (S.D.N.Y. Feb. 5, 2008), Fiedler argues that "the instant motion, to the extent it seeks summary judgment on behalf of Incandela, has been made by a lawyer who does not have standing to seek relief on behalf of Incandela." Pl.'s Opp'n at 7. On June 18, 2014, Deputy Nassau County Attorney Diane C. Petillo filed a Notice of Appearance on behalf of both Incandela and Nassau County. DE [5]. On June 5, 2015, Petillo withdrew her appearance only on behalf of Incandela. *See* Electronic Order, dated June 5, 2015. On July 8, 2015, Kreppein filed a Notice of Appearance only on behalf of Nassau County. DE [30]. Kreppein did not file a Notice of Appearance on behalf of Incandela until

December 14, 2015. DE [41]. However, unlike the attorney in *Baitey*, who sought relief on behalf of defendants she "expressly stated that she did not represent," 2008 U.S. Dist. LEXIS 113153, at *2 n.1, Kreppein has never disputed his representation of Incandela in this action. As Kreppein seeks relief on behalf of his own client, his failure to file a Notice of Appearance prior to filing the instant motion does not provide an independent basis for denying the Nassau County Defendants' motion for summary judgment.

### B. 42 U.S.C. § 1983 Legal Standard

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. Section 1983 itself does not create substantive rights; rather, "it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993); *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("[Section 1983] merely provides a method for vindicating federal rights elsewhere conferred ....") (internal quotation omitted). Therefore, to prevail on a claim arising under Section 1983, a plaintiff must establish: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F.Supp.2d 107, 111 (E.D.N.Y. 2011).

As a threshold issue, the Nassau County Defendants argue that they cannot be liable under Section 1983 because Incandela

was not acting under the color of state law on December 20, 2011. Nassau Defs.' Mem. at 5–6. In opposition, Plaintiff argues that the Nassau County Defendants "have admitted, and therefore are now estopped from denying, that Incandela's actions were undertaken in the course of his employment and under color of law as a Nassau County police officer." Pl.'s Opp'n at 11. Fiedler further argues that, "even were the Court to overlook the admission in defendants' Answer, plaintiff's proofs raise a triable issue of fact as to whether Incandela was acting under color of law." *Id.* at 12. For the reasons set forth herein, Incandela was not acting under the color of law on December 20, 2011, and Plaintiff's claims against the Nassau County Defendants arising under 42 U.S.C. § 1983 fail as a matter of law.

### 1. Judicial Admission

■■■■■ An "assertion of fact in a pleading is a judicial admission by which [a party] normally is bound throughout the course of the proceeding." *Bellefonte Reinsurance Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985). A judicial admission is "not considered to be evidence, 'but rather [has] the effect of withdrawing a fact from contention.'" *TR 39th St. Land Corp. v. Salsa Distrib. USA, LLC*, No. 11 Civ. 7193, 2015 WL 1499173, at *5 (S.D.N.Y. Mar. 25, 2015) (quoting *Maurizio v. Goldsmith*, 84 F.Supp.2d 455, 464 (S.D.N.Y. 2000)). To be considered a judicial admission, the assertion "must be [a] 'clear and unambiguous admission of fact.'" *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F.Supp.3d 17, 37 (S.D.N.Y. 2015) (emphasis added) (quoting *Kregler v. City of New York*, 821 F.Supp.2d 651, 656 (S.D.N.Y. 2011)). In contrast, "[i]t is well established that judicial admissions on questions of law have *no* legal effect." *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F.Supp. 258, 267 n.14

(S.D.N.Y. 1997) (emphasis in original). Additionally, "[a] District Court, convinced that an honest mistake had been made, the original allegation was untrue and that justice required relief ... may, in its discretion, relieve the party of its otherwise binding consequence." *Triumph Constr. Corp. v. New York City Council of Carpenters Pension Fund*, 29 F.Supp.3d 373, 380 (S.D.N.Y. 2014).

■■■■ As an affirmative defense in their Answer, the Nassau County Defendants claim that, "at all times herein mentioned and mentioned in the Complaint, the peace officers, and/or agents, servants or employees of the Defendant County of Nassau, having anything to do with the Plaintiff were in the performance of their respective duties as peace officers, and/or agents, servants or employees of the Defendant County of Nassau ...." *See* Nassau Ans. ¶ 224. According to Plaintiff, "[t]his is a formal judicial admission that is now conclusive against defendants." Pl.'s Opp'n at 11. However, as the question of "whether an actor was functioning under color of law or as a state actor is a question of law for the court," *Vega v. Fox*, 457 F.Supp.2d 172, 181 (S.D.N.Y. 2006), the doctrine of judicial admission is inapplicable. *See DeVito*, 975 F.Supp. at 267 n.14; *see also Funnekotter v. Agric. Dev. Bank of Zimbabwe*, No. 13 Civ. 1917, 2015 WL 3526661, at *8 (S.D.N.Y. June 3, 2015) (holding that there was "no judicial admission of fact that estop[ed] Plaintiffs from opposing [a] motion to dismiss" where "facts relevant to [a] question of law (which could constitute judicial admissions) [were] not pleaded in the complaint"). Moreover, elsewhere in their Answer, the Nassau County Defendants deny knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation that Incandela was "acting within the scope and course of his employment

with the NCPD, and under color of state law ...." *See* Compl. ¶ 25; Nassau Ans. ¶ 25. As the Nassau County Defendants do not clearly and unambiguously admit that Incandela was acting under the color of law on December 20, 2011, they are not estopped from contesting Incandela's status as a state actor. *See Hausler*, 127 F.Supp.3d at 37 ("Judicial admissions must be clear and unambiguous admissions of fact.") (internal quotation and alteration omitted); *see also Triumph Constr. Corp.*, 29 F.Supp.3d at 380 (holding that district courts have "broad discretion" regarding judicial admissions).

### 2. Incandela was not Acting Under the Color of Law

▬▬ It is well established that Section 1983's "under-color-of-state-law element ... excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982)). The Supreme Court has held that an individual acts under the color of law when he or she exercises power "made possible only because [he or she] is clothed with the authority of state law ...." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)); *see also United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999) ("The Supreme Court has broadly interpreted the color of law requirement, concluding that misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law.") (internal quotation and alteration omitted). In analyzing whether a police officer acted under the color of law, courts consider, *inter alia*, whether the officer:

(1) was off-duty; (2) identified himself as an officer of the law; (3) was in uniform; (4) was authorized to make an arrest at the time; (5) was carrying handcuffs; (6) was carrying any weapons; (7) flashed a police badge; and (8) placed the plaintiff under arrest or otherwise detained her.

*Cotz v. Mastroeni*, 476 F.Supp.2d 332, 372 (S.D.N.Y. 2007).

▬▬ Where the defendant is an off-duty police officer, "courts look to the nature of the officer's act, not simply his duty status." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994); *see also Rivera v. La Porte*, 896 F.2d 691, 695 (2d Cir. 1990) ("The off-duty status of an arresting officer does not mean that he is not acting under color of law."). Liability under Section 1983 "may attach where an off-duty officer 'invokes the real or apparent power of the police department.'" *Wong v. Yoo*, 649 F.Supp.2d 34, 54 (E.D.N.Y. 2009) (quoting *Pitchell*, 13 F.3d at 548). Therefore, even where an off-duty officer is engaged in an altercation that is private in nature, he "will be considered to be acting under color of law if the officer responded by invoking his or her authority." *Claudio v. Sawyer*, 675 F.Supp.2d 403, 408 (S.D.N.Y. 2009); *see also Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("We have no doubt that when an officer identifies himself as a police officer and uses his service pistol, he acts under color of law."). In contrast, "'personal pursuits' of police officers do not give rise to section 1983 liability ...." *Pitchell*, 13 F.3d at 548 (quoting *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945)). Ultimately, the court must examine the "totality of the circumstances surrounding the officer's acts, with attention to the nature of the officer's acts (rather than simply the officer's duty status) and the relationship of that conduct to the officer's official

duties." *Lizardo v. Denny's, Inc.*, No. 97–CV–1234, 2000 WL 976808, at *9 (N.D.N.Y. July 13, 2000).

■ No rational trier of fact could conclude that Incandela was acting under the color of law on December 20, 2011. It is undisputed that Incandela was off duty at all relevant times, and that he contacted the SCPD—a police department for which he did not work—in order to "report the location of a vehicle that he knew had been involved in a crime five days earlier, and then gave a statement as to what he had observed." Nassau Defs.' Mem. at 5; *see also* Incandela Aff. ¶¶ 8, 17. When SCPD officers arrested Fiedler outside of 28 Knoll Street, Incandela remained in his vehicle and did not interact with Fiedler in any manner. Incandela Aff. 13, 14. There is no evidence that Incandela was wearing his NCPD uniform, was carrying or used a department-issued firearm or handcuffs, flashed a police badge, or identified himself as a police officer at any time such that he "invoke[d] the real or apparent power of the police department." *Wong*, 649 F.Supp.2d at 54; *see also Cotz*, 476 F.Supp.2d at 372. Rather, the evidence establishes that Incandela contacted the SCPD to report a crime and provided a sworn statement following Fiedler's arrest, neither of which "depended on state authority ...." *Polk Cty. v. Dodson*, 454 U.S. 312, 319, 102 S.Ct. 445, 450, 70 L.Ed.2d 509 (1981). As Incandela did not exercise power "made possible only because [he was] clothed with the authority of state law," *Classic*, 313 U.S. at 326, 61 S.Ct. at 1043, he was not acting under the color of law pursuant to Section 1983.

In opposition to the Nassau County Defendants' motion, Plaintiff argues, *inter alia*, that Incandela "took an active role in plaintiff's arrest" because he "surveilled and followed the vehicle in which plaintiff was a passenger, 'coordinated a response' with the Suffolk County Police Department, and ... falsely accused plaintiff of being one of two people who unloaded items from the trunk and rear seat of the vehicle." Pl.'s Opp'n at 9. However, as discussed above, there is no evidence that Incandela performed any "duties prescribed generally for police officers." *See Pitchell*, 13 F.3d at 548. To the extent that Incandela "coordinated a response" with the SCPD, *see* Pl.'s Opp'n at 9, the evidence establishes that Incandela merely reported to 28 Knoll Street, identified Fielder and Francese as the individuals he observed moving boxes from the vehicle to the garage at 669 South Sixth Street, and provided a sworn statement to Focas.[3] *See* Incandela Aff. ¶¶ 12–16. These facts are insufficient to establish that Incandela was a state actor for purposes of Section 1983. *See Chiaro v. Cty. of Nassau*, No. 09–CV–3702, 2011 WL 3701804, at *4 (E.D.N.Y. July 29, 2011) (holding that the defendant was acting as a private citizen where the plaintiff did not offer "any evidence that [the defendant] utilized any authority or powers of the police department"); *Miqui v. City of New York*, No. 01–CV–4628, 2003 WL 22937690, at *4 (E.D.N.Y. Dec. 5, 2003) (holding that "no reasonable jury

---

**3.** Plaintiff's argument that "it also is likely that Incandela identified himself to the Suffolk County Police Department as a fellow law enforcement official and therefore participated in the events leading to plaintiffs' arrest to a greater degree than would be allowed of a private citizen," *see* Pl.'s Opp'n at 13 n.3, is insufficient to defeat summary judgment as there is no evidence before the Court that Incandela identified himself as a police officer at any time. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) ("The defendants' bald assertion, completely unsupported by evidence, did not satisfy their burden; it certainly did not present a sufficient disagreement to require submission to the jury as required by Fed. R. Civ. P. 56(c).") (internal alteration and quotation omitted).

could conclude that [the defendant] was acting under the color of law" where it was undisputed that he "was off-duty and out of uniform, that he did not flash his badge and did not in any way announce ... that he was an auxiliary officer or was acting in that capacity, that he issued no commands, and that [a] gun he used ... was not issued by the police department").

Relying upon *Hearst v. City of New York*, No. 05–CV–5272, 2012 WL 1020041, 2012 U.S. Dist. LEXIS 41135 (E.D.N.Y. Feb. 17, 2012), Plaintiff further argues that "there is ample evidence from which the trier of fact reasonably can infer that Incandela acted as more than just a private citizen and that he engaged in the type of activities that normally are associated with law enforcement officials." Pl.'s Opp'n at 13. In *Hearst*, during the course of a personal dispute, an off-duty police officer identified himself to the plaintiff as a police officer, shot the plaintiff with a department-issued service revolver, and identified himself as a "member of the service" to a 911 dispatcher. 2012 WL 1020041, at *5, 2012 U.S. Dist. LEXIS 41135, at *16– 18. In denying the defendant's motion for summary judgment, the court observed that it was "undeniable that the altercation ... began as a personal dispute," but held that "there [were] questions of material fact as to whether [the defendant] was acting within the scope of his employment when he shot [the plaintiff]." *Id.* at *6, 2012 U.S. Dist. LEXIS 41135, at *19–20. Unlike *Hearst*, as discussed above, Incandela's actions of calling the SCPD to report a crime and providing a sworn statement to Focas were not "made possible only because [he was] clothed with the authority of state law," *Walsh*, 194 F.3d at 50, and are insufficient to establish that he

was acting under the color of law on December 20, 2011. Therefore, Incandela is entitled to judgment as a matter of law with respect to Plaintiff's claims arising under 42 U.S.C. § 1983.

### C. Individual Liability Arising Under 42 U.S.C. § 1983

■ Plaintiff asserts causes of action arising under Section 1983 for false arrest, malicious prosecution, abuse of process, and conspiracy. Compl. ¶¶97–101, 108–12, 120–25, 145–49. He also asserts overlapping claims arising under New York state law for malicious prosecution, abuse of process, and conspiracy.[4] *Id.* at ¶¶102– 07, 113–19, 138–44. Although Plaintiff does not oppose the Suffolk County Defendants' motion for summary judgment, "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (holding that "summary judgment must be denied even if no opposing evidentiary matter is presented" where the movant's evidence fails to establish liability as a matter of law). Therefore, the Court considers whether the Suffolk County Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims arising under both Section 1983 and New York state law for false arrest, malicious prosecution, abuse of process, and conspiracy. Additionally, although Incandela is entitled to judgment as a matter of law with respect to Plaintiff's claims arising under Section 1983, the Court considers whether he is entitled to judgment

---

4. Plaintiff does not assert a claim for false arrest arising under New York state law. *See generally* Compl.; *see also* Pl.'s Opp'n at 1 n.1

("Plaintiff's complaint does not include a state-law cause of action for false arrest.").

as a matter of law insofar as Plaintiff's claims for malicious prosecution, abuse of process, and conspiracy arise under New York state law.

### 1. False Arrest

In analyzing a claim for false arrest under Section 1983, "federal courts look to the law of the state in which the arrest occurred." *Hoyos v. City of New York*, 999 F.Supp.2d 375, 385 (E.D.N.Y. 2013). To prevail on a false arrest claim under either Section 1983 or New York law, the plaintiff must establish: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks*, 316 F.3d at 134–35; *see also Prowisor v. Bon–Ton, Inc.*, 426 F.Supp.2d 165, 171 (S.D.N.Y. 2006) ("A section 1983 claim for false arrest ... is identical to a claim for false arrest under New York law."). The existence of probable cause to arrest "constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted). Probable cause to arrest exists where an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). The Second Circuit has held that "a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal citation omitted); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that the report of a "putative victim or an eyewitness" can be used to establish probable cause). Whether probable cause to arrest exists "is objective ... and determined by the totality of the circumstances." *Prowisor*, 426 F.Supp.2d at 172.

The undisputed facts establish that probable cause existed to arrest Plaintiff for criminal possession of stolen property in the fifth degree. Following Incandela's report to the SCPD that he "observed a vehicle that he recognized as being involved in a previous theft of a package from the door step of his girlfriend," Capparelli and Focas responded to 669 South Sixth Street, where they recovered packages determined to be stolen. Capparelli Aff. ¶ 3; Focas Aff. ¶ 3. Based on Incandela's subsequent identification of Fiedler and Francese as the individuals he observed moving packages from the vehicle to the garage at 669 South Sixth Street, the SCPD arrested Plaintiff. *Id.* at ¶¶5, 6. These facts are sufficient to establish that probable cause existed to arrest Plaintiff for criminal possession of stolen property in the fifth degree. *See Martinez*, 202 F.3d at 634 ("[P]olice officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."); *Prowisor*, 426 F.Supp.2d at 172 (holding that probable cause existed where two witnesses "alleged that they independently witnessed plaintiff [commit a crime], with one swearing a Complaint/Information"); *see also* N.Y. Penal Law § 165.40 ("A person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than the owner thereof or to impede the recover by an owner thereof."). As probable cause existed to arrest Plaintiff for criminal possession of stolen property in the fifth degree, the Suffolk County Defendants are entitled to judgment as a

matter of law with respect to Plaintiff's claim for false arrest arising under 42 U.S.C. § 1983 and New York state law.

## 2. Malicious Prosecution

 Claims of malicious prosecution arising under Section 1983 are governed by the same standard applied under New York state law. *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). To prevail on a claim of malicious prosecution under Section 1983 or New York law, a plaintiff must establish: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)); *see also Genovese v. Cty. of Suffolk*, 128 F.Supp.3d 661, 668 (E.D.N.Y. 2015) ("[T]he elements of a malicious prosecution claim are identical under Section 1983 and New York law."). A police officer initiates criminal proceedings for purposes of a malicious prosecution claim by having the plaintiff arraigned, filling out complaining or corroborating affidavits, or signing a felony complaint. *See Llerando–Phipps v. City of New York*, 390 F.Supp.2d 372, 382–83 (S.D.N.Y. 2005). Like a claim for false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino*, 331 F.3d at 72. However, the existence of probable cause at the time of arrest "may not be dispositive of the issue as to the malicious prosecution claim, because . . . evidence could later surface which would eliminate that probable cause." *Mitchell v. Cty. of Nassau*, 786 F.Supp.2d 545, 562 (E.D.N.Y. 2011). Nevertheless, "in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution." *D'Angelo v. Kir-*

*schner*, 288 Fed.Appx. 724, 726 (2d Cir. 2008).

### i. Individual Suffolk Defendants

 As discussed above, probable cause existed to arrest Fiedler for criminal possession of stolen property in the fifth degree. There is no evidence that the Individual Suffolk Defendants learned of exculpatory facts or circumstances after Fiedler's arrest sufficient to eliminate probable cause to initiate criminal proceedings. To the contrary, both Capparelli and Focas affirmed that they "did not become aware of any information that would lead [them] to believe that probable cause did not exist for [Plaintiff's] arrest or that would eliminate probable cause." Capparelli Aff. ¶ 7; Focas Aff. ¶ 7. Therefore, probable cause existed to initiate criminal proceedings against Fiedler, *see D'Angelo*, 288 Fed. Appx. at 726, and the Suffolk County Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claim for malicious prosecution arising under Section 1983 and New York state law.

### ii. Incandela

 Under New York law, "'[i]n order for a civilian complainant to be considered to have initiated a criminal proceeding, it must be shown that the complainant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Weiner v. McKeefery*, 90 F.Supp.3d 17, 45 (E.D.N.Y. 2015) (quoting *Barrett v. Watkins*, 82 A.D.3d 1569, 1572, 919 N.Y.S.2d 569 (3d Dep't 2011)) (internal alteration omitted); *see also Arum v. Miller*, 273 F.Supp.2d 229, 234 (E.D.N.Y. 2003) (holding that a civilian may be held liable for malicious prosecution under New York law "where the plaintiff shows that the civilian 'initiated' or 'instigated' the proceedings against her

by contacting the police and then encouraging their prosecution") (internal alteration omitted). Therefore, "a defendant may be said to commence or continue a prosecution if that defendant knowingly provides false information or fabricated evidence that is likely to influence the prosecutors or the grand jury." *Anilao v. Spota*, 774 F.Supp.2d 457, 505 (E.D.N.Y. 2011) (internal quotation and alteration omitted). In contrast, a "civilian who merely provides information to the police who are then free to exercise their own judgment whether to prosecute is not liable for malicious prosecution." *Arum*, 273 F.Supp.2d at 234; *see also Wong*, 649 F.Supp.2d at 65 ("[C]ourts have held that simply reporting a crime to the police and serving as a witness does not meet the first element of initiating a criminal proceeding.").

 Incandela is entitled to judgment as a matter of law with respect to Plaintiff's claim for malicious prosecution arising under New York law. The evidence establishes that Incandela did not actually accuse Fiedler of moving *stolen* property from the vehicle to the garage at 669 South Sixth Street or of otherwise committing a crime. Rather, Incandela initially contacted the SCPD because he "observed a vehicle that he recognized as being involved in a *previous* theft of a package from the door step of his girlfriend." Capparelli Aff. ¶ 3; Focas Aff. ¶ 3 (emphasis added). Contrary to Plaintiff's arguments that "Incandela told members of the SCPD that ... he saw plaintiff unload *stolen* property from the trunk and rear seat of the vehicle," and that Incandela "falsely accused plaintiff of unloading *stolen* property into the garage and house," *see* Pl.'s Opp'n at 2 (emphasis added), in his December 20, 2011 sworn statement, Incandela stated that he "saw 2 white males exit the vehicle and carry 5 boxes from the trunk of the car into the garage." Incandela Stmt. at 1. In his affidavit submitted in support of the instant motion, Incandela stated that he "observed two individuals ... exit the vehicle and unload boxes into the garage." Incandela Aff. ¶ 10. There is no evidence that Incandela informed the SCPD that the packages he observed Fiedler and Francese move from the vehicle to the garage were stolen. Rather, based on Incandela's observations, the SCPD conducted its own investigation, including searching the garage at 669 South Sixth Street and speaking with the owners of the property recovered therein, which revealed that the packages in the garage were stolen. *See* Suffolk 56.1 Stmt. ¶¶8–11; Mitchell Decl. Exs. B–D. As Incandela merely provided information to the SCPD, which then conducted its own investigation resulting in Fiedler's arrest and prosecution, Incandela did not initiate criminal proceedings as required to establish a claim for malicious prosecution. *See Wong*, 649 F.Supp.2d at 65; *Arum*, 273 F.Supp.2d at 234.

 Even accepting as true Plaintiff's argument that Incandela incorrectly accused Fiedler of moving boxes from the vehicle to the garage, there is no evidence that Incandela acted with actual malice as required to establish a claim for malicious prosecution. Actual malice "does not require a plaintiff to prove that the defendant was motivated by spite or hatred," but rather, that the defendant initiated a criminal proceeding "due to a wrong or improper motive ...." *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994). As Incandela contacted the SCPD to report that he recognized the vehicle he observed in the December 15, 2011 surveillance footage of his girlfriend's home, and never actually accused Fiedler of moving *stolen* property at 669 South Sixth Street or of otherwise committing a crime, it cannot be

said that Incandela acted with "a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996); *see also Morris v. Silvestre*, 604 Fed.Appx. 22, 25 (2d Cir. 2015) (holding that a defendant who did not recommend prosecution for the offenses with which the plaintiff was charged "could not have acted with 'actual malice' with respect to these charges"). Therefore, Plaintiff's argument that "there is more than ample evidence from which the jury can conclude that plaintiff has established the 'malice' element of his malicious prosecution claim" lacks merit.[5] Pl.'s Opp'n at 17; *see also Grossman v. City of New York*, No. 07 Civ. 2764, 2008 WL 563413, at *3 (S.D.N.Y. Feb. 28, 2008) (finding an absence of malice where the plaintiff presented "mere conclusory allegations and speculation relating to malice") (internal alteration and quotations omitted).

Based upon the foregoing, Incandela is entitled to judgment as a matter of law with respect to Plaintiff's claim for malicious prosecution arising under New York state law.

### 3. Abuse of Process

A claim for abuse of process under Section 1983 is analyzed under the same standards applicable under New York law. *Anderson v. Cty. of Nassau*, 297 F.Supp.2d 540, 548 (E.D.N.Y. 2004); *see also Lee v. Corneil*, No. 13–CV–8359, 2016 WL 1322444, at *6 (S.D.N.Y. Apr. 1, 2016) ("Because a section 1983 claim for abuse of process borrows its elements from New York state law, both the federal and state claim follow the same analysis."). To prevail on a claim for abuse of process under Section 1983 or New York law, a plaintiff must establish that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Bertuglia v. City of New York*, 133 F.Supp.3d 608, 638 (S.D.N.Y. 2015) (quoting *Savino*, 331 F.3d at 76). Moreover, "[t]he pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." *Lopez v. City of New York*, 901 F.Supp. 684, 691 (S.D.N.Y. 1995).

The Individual Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims for abuse of process. First, Plaintiff's claim for abuse of process arising under New York state law against Incandela fails as a matter of law because, as discussed above, Incandela did not initiate legal proceedings against Plaintiff, and there is no evidence of any other form of regularly issued process that Incandela improperly employed. *Frederique v. Cty. of Nassau*, 168 F.Supp.3d 455, 484 (E.D.N.Y. 2016) (granting the defendants' motion for summary judgment with respect to the plaintiffs' abuse of process claim where there was no evidence that the defendants employed any form of regularly issued legal process); *see also Conte v. Cty. of Nassau*, No. 06–CV–4746, 2010 WL 3924677, at *19 (E.D.N.Y. Sept. 30, 2010) (identifying subpoenas, indictments, and arrest warrants as other forms of legal process for purposes of an abuse of process claim). Next, although certain of the Individual Suffolk

---

**5.** To the extent that Plaintiff argues that Incandela "could not have mistakenly believed that plaintiff had removed the items" because, "by [Incandela's] own admission, [he] 'never lost sight of the vehicle,'" *see* Pl.'s Opp'n at 15, Incandela actually stated that he "never lost sight of the vehicle ... as [he] followed it from 669 S. 6th St. to 28 Knoll St., Lindenhurst." Incandela Stmt. at 2.

Defendants employed legal process by arresting Plaintiff and completing Misdemeanor Informations, there is no evidence that they intended to harm Plaintiff without justification or sought to "obtain a collateral objective that is outside the legitimate ends of the process." *Bertuglia*, 133 F.Supp.3d at 638. Rather, the evidence establishes that the Individual Suffolk Defendants sought to prosecute and convict Plaintiff for criminal possession of stolen property in the fifth degree, which is insufficient to establish a claim for abuse of process. *See Savino*, 331 F.3d at 77 ("[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution."); *Pierre v. City of New York*, No. 05–CV–5018, 2007 WL 2403573, at *12 (E.D.N.Y. Aug. 17, 2007) ("Plaintiffs' abuse of process claims fail because there is no evidence in the record that defendants aimed to achieve an objective other than [the plaintiffs'] prosecution and conviction."). Therefore, the Individual Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims for abuse of process arising under Section 1983 and New York state law.

### 4. Conspiracy

 To prevail on a Section 1983 conspiracy claim, the plaintiff must establish: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."[6] *Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 387 (S.D.N.Y. 2013) (quoting *Pangburn v.*

*Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)); *see also Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F.Supp.2d 309, 331 (E.D.N.Y. 2010) ("To sustain a claim for conspiracy under Section 1983, a plaintiff must demonstrate that the defendant acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, that violated the plaintiff's rights ... secured by the constitution or federal courts.") (internal quotation omitted). Private individuals may "be liable under Section 1983 if they have conspired with or engaged in joint activity with state actors." *Storck v. Suffolk Cty. Dep't of Soc. Servs.*, 62 F.Supp.2d 927, 940 (E.D.N.Y. 1999); *see also Fisk v. Letterman*, 401 F.Supp.2d 362, 376 (S.D.N.Y. 2005) (holding that a private actor "act[s] under the color of state law if they jointly participate or conspire with a state actor to violate an individual's federal rights"). However, it is well established that "a § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation." *Mitchell*, 786 F.Supp.2d at 564; *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights."). Having determined that neither Incandela nor the Individual Suffolk Defendants violated Plaintiff's constitutional rights, Plaintiff's claims of conspiracy arising under Section 1983 against the Individual Defendants fails as a matter of law.

### D. Municipal Liability Arising Under 42 U.S.C. § 1983

 A municipality may not be held liable under Section 1983 on a *respondeat*

---

**6.** Although Plaintiff asserts claims of conspiracy under both Section 1983 and New York state law, *see* Compl. ¶¶138–49, "New York does not recognize civil conspiracy as an independent cause of action." *Reich v. Lopez*, 38 F.Supp.3d 436, 460 (S.D.N.Y. 2014). Rather, New York courts recognize that "the damage

for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts." *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956). Therefore, the Court analyzes Plaintiff's claim for civil conspiracy as arising only under Section 1983.

*superior* theory of liability. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *see also Genovese v. Town of Southampton*, 921 F.Supp.2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted). Rather, a municipality may only be held liable under Section 1983 "if the deprivation of the plaintiff's rights under federal law [was] caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Pipitone v. City of New York*, 57 F.Supp.3d 173, 194 (E.D.N.Y. 2014) ("Municipalities can only be held liable under § 1983 when they are a 'moving force' behind the constitutional deprivation."). A policy or custom for purposes of municipal liability under Section 1983 need not be explicit. *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). A policy or custom may be inferred by constitutional violations that are so "persistent and widespread" that they "practically have force of law." *Davis v. City of New York*, 959 F.Supp.2d 324, 338 (S.D.N.Y. 2013). It is well established that " 'a single incident involving an employee below the policymaking level will not suffice to support an inference of municipal custom or policy.' " *Brewster v. Nassau Cty.*, 349 F.Supp.2d 540, 549 (E.D.N.Y. 2004) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995)).

▮▮▮ The County Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims for municipal liability arising under Section 1983. As an initial matter, having concluded that Incandela was not acting under the color of law on December 20, 2011, Nassau County cannot be liable under Section 1983. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that, "[i]n order to prevail on a claim against a municipality under section 1983," the plaintiff must prove, *inter alia*, "actions taken under color of law"); *Miqui*, 2003 WL 22937690, at *5 ("Because [the defendant] did not act under color of law, the city . . . cannot be held responsible for his private acts."). Additionally, having concluded that the Individual Suffolk Defendants did not violate Fiedler's constitutional rights, and are therefore not liable to Plaintiff under Section 1983, Fiedler's claim against Suffolk County for municipal liability pursuant to Section 1983 also fails as a matter of law. *See Claudio*, 675 F.Supp.2d at 406 ("[A] municipality is liable under *Monell* only where there is an underlying constitutional violation committed by someone acting under color of law."); *Khan v. Ryan*, 145 F.Supp.2d 280, 287 (E.D.N.Y. 2001) ("Since there is no underlying constitutional violation by a municipal official, the [municipality] may not be held liable."). Therefore, the County Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims for municipal liability arising under Section 1983.

### E. Liability Arising Under New York State Law

In addition to his claims arising under Section 1983, Plaintiff asserts claims arising solely under New York law for: (i) negligence and gross negligence; (ii) unlawful search and seizure in violation of the New York State Constitution; (iii) negligent training, supervision, disciplining, and retention; and (iv) vicarious liability against the County Defendants. Compl. ¶¶133–91.

### 1. Negligence and Gross Negligence

▮▮▮ To prevail on a claim for negligence under New York law, "a plaintiff

must establish (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff." *Frederique*, 168 F.Supp.3d at 484 (internal quotation omitted); *see also Vega*, 457 F.Supp.2d at 183 ("The existence of a duty of care is a legal, policy-laden declaration reserved for judges.") (internal quotation omitted). The defendant's duty must not be "merely a general duty of care to society but a specific duty to the plaintiff, for 'without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'" *Breitkopf v. Gentile*, 41 F.Supp.3d 220, 272 (E.D.N.Y. 2014) (quoting *Lauer v. City of New York*, 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000)). It is well established that "a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Moreover, "[a] claim of harm predicated solely on intentional acts may not give rise to a claim of negligence." *Ortiz v. City of New York*, No. 15 Civ. 2206, 2016 WL 7009059, at *3 (S.D.N.Y. Nov. 30, 2016) (citing *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993)).

Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims for negligence and gross negligence. With respect to the Individual Suffolk Defendants, Plaintiff alleges that he was harmed as a result of their negligence in failing "to exercise reasonable care in connection with the performance of their duties ...." Compl. ¶ 127. As a plaintiff "may not recover under broad general principals of negligence" against law enforcement officers, Fielder's claim for negligence and gross negligence

against the Individual Suffolk Defendants fails as a matter of law. *Burbar v. Inc. Vill. of Garden City*, 961 F.Supp.2d 462, 474 (E.D.N.Y. 2013); *see also Bernard*, 25 F.3d at 98 (holding that "negligence claims arising out of allegedly improper ... procedures during an arrest" are barred). Furthermore, the evidence establishes that the Individual Defendants acted intentionally at all relevant times, and Plaintiff fails to identify any inadvertent or accidental harmful conduct. Specifically, Incandela intentionally reported his observations to the SCPD and provided a sworn statement following Fiedler's arrest, and the Individual Suffolk Defendants intentionally arrested Plaintiff and commenced criminal proceedings for criminal possession of stolen property in the fifth degree. *See* Incandela Aff. ¶¶8–16; Suffolk 56.1 Stmt. ¶¶1–3, 11. As a negligence claim must be predicated on accidental or inadvertent conduct, Fiedler's claims for negligence and gross negligence fail as a matter of law. *See Frederique*, 168 F.Supp.3d at 484 (granting summary judgment on the plaintiffs' negligence and gross negligence claims where "there [was] no basis in the record to support a finding that the [action] was inadvertent, accidental, or anything but willful") (internal quotation omitted); *see also Pasternack v. Lab. Corp. of Am.*, 892 F.Supp.2d 540, 552 (S.D.N.Y. 2012) ("Where a claim for ordinary negligence fails, a gross negligence claim necessarily fails."). Therefore, the Individual Defendants are entitled to summary judgment with respect to Plaintiff's claims for negligence and gross negligence.

## 2. New York Constitution

Article I, § 12 of the New York Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and sei-

zures, shall not be violated."[7] N.Y. Const. art. I, § 12; *see also Brown v. City of New York*, 201 F.Supp.3d 328, 332, 2016 WL 4446126, at *3 (E.D.N.Y. Aug. 16, 2016) ("Article I, § 12 of the New York Constitution is a verbatim adoption of the Fourth Amendment of the United States Constitution."). The New York Court of Appeals has held that a plaintiff may "pursue a state constitutional tort claim for damages for violations of the right to be free of unreasonable searches and seizures under Article I, § 12 of the New York constitution." *Evans v. Solomon*, 681 F.Supp.2d 233, 255 (E.D.N.Y. 2010) (citing *Brown v. State of New York*, 89 N.Y.2d 172, 191–92, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996)). Under New York law, "the test for determining whether a seizure has occurred is 'whether a reasonable person would have believed, under the circumstances, that the officer's conduct was a significant limitation on his or her freedom.'" *Posr v. Killackey*, No. 01 Civ. 2320, 2003 WL 22962191, at *8 (S.D.N.Y. Dec. 17, 2003) (quoting *People v. Bora*, 83 N.Y.2d 531, 536, 611 N.Y.S.2d 796, 634 N.E.2d 168 (1994)). However, "a search or seizure based on probable cause does not violate" the New York State Constitution. *Brown*, 201 F.Supp.3d at 332, 2016 WL 4446126, at *3; *see also Miller v. O'Bryan*, 498 F.Supp.2d 548, 555 (N.D.N.Y. 2007) (dismissing illegal search and seizure claims arising under the New York Constitution where probable cause existed to believe that the defendant had committed, was committing, or was about to commit a crime). ▇▇▇ Defendants are entitled to judgment as a matter of law with respect

to Plaintiff's claim for unreasonable search and seizure arising under the New York State Constitution. With respect to the Suffolk County Defendants, as probable cause existed to arrest Plaintiff for criminal possession of stolen property in the fifth degree, their actions of arresting and searching Fiedler were not unlawful. *See Miller*, 498 F.Supp.2d at 555. With respect to Incandela, the evidence establishes that Incandela neither arrested nor participated in any search of Fiedler, but rather, that Incandela remained in his vehicle as SCPD officers arrested Fiedler and placed him in a police vehicle. *See* Incandela Aff. ¶¶13, 14; Incandela Stmt. at 2; *see also* Nassau Defs.' Mem. at 9 ("Incandela was not involved in any search or seizure [of Plaintiff].")). Therefore, Incandela did not violate Plaintiff's right to be free from unreasonable searches and seizures, *see Posr*, 2003 WL 22962191, at *8, and Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims arising under the New York State Constitution.

### 3. Negligent Training, Supervision, Disciplining, and Retention

▇▇▇ In New York, "[a] municipality may be held liable for negligently training or supervising its law enforcement officers." *Marcano v. City of Schenectady*, 38 F.Supp.3d 238, 268 (N.D.N.Y. 2014). To prevail on a claim for negligent hiring, training, supervision, or retention, "a plaintiff must prove that a municipality's failure to properly train, hire, retain, or supervise its police officers in a relevant respect evidences a deliberate indifference

---

7. Although Plaintiff also cites Article I, § 6 of the New York Constitution in his Complaint, *see* Compl. ¶¶186–91, that provision addresses due process violations and is not relevant to Plaintiff's claims. *See* N.Y. Const. art. I, § 6; *see also Posr*, 2003 WL 22962191, at *8 (holding that N.Y. Const. art. I, § 6 was not relevant to the plaintiff's unlawful search and seizure claims, and analyzing the plaintiff's claims as arising under N.Y. Const. art. I, § 12).

to the rights of its inhabitants." *Jackson v. City of New York*, 939 F.Supp.2d 219, 234 (E.D.N.Y. 2013). However, "an underlying requirement in actions for negligent hiring or retention is that the defendant's employee is individually liable for a tort." *Torain v. Casey*, No. 16 Civ. 2682, 2016 WL 6780078, at *7 (S.D.N.Y. Sept. 16, 2016) (quoting *Primeau v. Town of Amherst*, 303 A.D.2d 1035, 1036, 757 N.Y.S.2d 201 (4th Dep't 2003)) (internal alterations omitted); *see also Farash v. Cont'l Airlines, Inc.*, 574 F.Supp.2d 356, 368 (S.D.N.Y. 2008) ("Since plaintiff has failed to allege negligence on the part of the [employee], it necessarily follows that plaintiff has failed to allege any facts from which a viable cause of action for negligent hiring, training, or supervision could be gleaned."). Having determined that the Individual Defendants are not individually liable to Plaintiff, the County Defendants are entitled to judgment as a matter of law with respect to Fiedler's claim for negligent training, supervision, disciplining, and retention.

### 4. Vicarious Liability

 Unlike claims arising under Section 1983, a municipality may be vicariously liable for the common law torts of its employees. *See L.B. v. Town of Chester*, 232 F.Supp.2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under [Section] 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior*."). However, "there can be no imposition of vicarious liability in the absence of underlying liability." *Shapiro v. Kronfield*, No. 00 Civ. 6268, 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004); *see also Brown v. City of New York*, No. 14–CV–2700, 2015 WL 427942, at *6 (E.D.N.Y. Feb. 2, 2015) (granting the defendants' motion for summary judgment

with respect to the plaintiff's state law claims for vicarious liability in the absence of underlying liability). Having concluded that the Individual Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims arising under New York law, the County Defendants are also entitled to judgment as a matter of law with respect to Plaintiff's claims for vicarious liability.

### IV. CONCLUSION

For the reasons set forth herein, both the Suffolk County Defendants' motion for summary judgment and the Nassau County Defendants' motion for summary judgment are granted in their entirety. The Clerk of Court is respectfully directed to issue judgment in favor of Defendants and to close this case.

**SO ORDERED.**